CHARLES H. VALENTINE *vs.* JOHN WHEELER.

Worcester. Oct. 4, 1876. — June 29, 1877. COLT, MORTON & SOULE, JJ., absent.

A. gave a bond, with sureties, to B., in a penal sum, conditioned for the payment by A. of all demands, acceptances or indorsements and obligations for which B. should in any way become responsible on account of a firm of which A. was a member, and for saving B. harmless and free from loss or inconvenience on account of any debt, claim, demand or liability of the firm. After this, B. accepted a draft drawn by A., and the holder of it sued B. and recovered judgment; B. paid a sum less than the face of the judgment, and assigned the bond to the holder, and the judgment was entered as satisfied, the holder agreeing that, in case he realized on the bond the amount of the judgment, he would repay the sum paid by B. *Held,* in an action on the bond, that it was a contract of indemnity merely, and that execution should issue only for the sum paid by B.

CONTRACT brought for the benefit of George M. Chapman, upon a joint and several bond in the sum of $40,000, executed by John P. Wheeler, as principal, and the defendant and an-

other, as sureties, and containing the following condition : " If
the said John P. Wheeler or his assigns shall well and truly pay,
or cause to be paid, all demands, acceptances or indorsements
and obligations for which said [Charles H.] Valentine is in any-
wise responsible for or on account of said firm of John P.
Wheeler & Co., and shall hold and save said Valentine harm-
less and free from loss or inconvenience on account of any debt,
claim, demand or liability of the firm of said John P. Wheeler
& Co., then this bond shall be void, otherwise it shall remain in
full force and effect."

After the former decision, reported 116 Mass. 478, the case
was heard, upon the question for what sum execution should
issue, in the Superior Court, by *Aldrich*, J., who found the fol-
lowing facts :

On February 10, 1859, John P. Wheeler & Co. drew a draft
on six months for $1074.74, payable to the order of Isaac L.
Hunt, on Charles H. Valentine, which was accepted by Valen-
tine, and on February 24, 1859, John P. Wheeler & Co. drew
a draft on six months, for $1074.75, also payable to the order
of Hunt on Valentine, and which was also accepted by him, the
consideration of both drafts being goods sold by Hunt to John
P. Wheeler & Co. George M. Chapman lent money to Hunt,
and held the acceptances as collateral security therefor.

Prior to August 30, 1860, Hunt assigned his property to Sam-
uel I. Hunt, in trust for his creditors, under the laws of the State
of New York. In September, 1860, Chapman caused a suit to
be brought on the drafts against Valentine, in the name of Sam-
uel I. Hunt, in the Supreme Court for the county of New York,
and recovered judgment therein, on September 21, 1860, for
$1862.25, including costs.

On February 18, 1861, Valentine assigned the bond to Chap-
man, as collateral security. On August 6, 1867, Valentine paid
Chapman $500, and at that time made absolute the assignment
of the bond made to Chapman as collateral security in 1861, and,
in consideration thereof, Chapman procured the entry of satis-
faction of the judgment, and released the same, further agreeing
with Valentine, that, in case Chapman realized, upon the bond,
the amount of the judgment, interest and costs, he should repay
the $500 to Valentine.

Upon these facts, the defendant asked the judge to rule, as matter of law, that execution should only issue for nominal damages, or, at the most, for the sum of $500 and interest since August 6, 1867. The judge refused so to rule, but ruled that the plaintiff was entitled to have execution issue for the amount of the judgment and interest, and directed execution to issue for the sum of $3584.83 damages. The defendant alleged exceptions.

*W. F. Slocum & F. P. Goulding*, for the defendant.

*F. A. Gaskill*, for the plaintiff.

AMES, J. It has been said in *Gilbert* v. *Wiman*, 1 Comst. 550, that there is no branch of the law in which the decisions of the courts have been more fluctuating than in regard to the rule of damages in suits on contracts in the nature of indemnity. It is intimated in that case that the more just and reasonable rule would be that the damages should be measured by the loss actually sustained; and it is added that such is the tendency of the more modern decisions both in this country and in England. On the other hand, it is well established by numerous decisions, that upon a promise by one person to pay a debt due from another, the latter may maintain an action, after the debt has become due, without having first paid it himself, and may recover the entire amount. *Furnas* v. *Durgin*, 119 Mass. 500 507, and cases there cited.

If the bond in the present case is to be treated merely as a bond of indemnity against loss by reason of his responsibility upon the drafts of John P. Wheeler & Co., the plaintiff is only to recover the actual amount of the loss. What he had lost would be the measure of his damages. On the other hand, if it is to be taken as a promise that the principal obligor shall specifically pay these drafts at maturity, the measure of damages might be the entire amount of the drafts with interest and costs.

Without undertaking to reconcile the conflicting authorities in cases of this general class, we have come to the conclusion, upon the facts and special circumstances of the present case, that the bond is to be construed as a contract of indemnity merely, and that the plaintiff's damages must be limited to the amount of his actual loss. *Little* v. *Little*, 13 Pick. 426. *Aberdeen* v. *Blackmar*, 6 Hill, 324. *Webb* v. *Pond*, 19 Wend. 423. *Wallis*

v. *Carpenter,* 110 Mass. 347. The contract, as expressed in the bond, is that the principal obligor " shall well and truly pay, or cause to be paid, all demands, acceptances or indorsements and obligations for which said Valentine is in anywise responsible for or on account of said firm of John P. Wheeler and Co., and shall hold and save the said Valentine harmless and free from loss and inconvenience on account of any debt, claim, demand or liability of the firm of said John P. Wheeler & Co." From the terms of the bond, we must infer that the plaintiff's acceptance of the drafts was for the purpose of lending his credit to that firm. He was simply an accommodation indorser or guarantor ; or, to state the proposition more accurately, he stood in the same position as if he had given what is called an accommodation note in order that the payee might use it for his own benefit. If the acceptance of the drafts had represented a genuine and existing debt due from him to the drawers, there would have been no occasion for the drawers to give security to the acceptor for their payment at maturity. The covenant in the bond was not an undertaking, therefore, to pay a debt absolutely due from Valentine, but to protect him against a contingent liability. So far as the parties to the bond were concerned, he was only conditionally liable on the drafts, and was to pay them if the drawer did not. Even if they were not paid at maturity, there might be a state of facts in which Valentine, as an accommodation acceptor, might himself take them up and be relieved of any further liability upon them by the payment of less than their nominal amount. That would depend upon the use which has been made of them by the party accommodated. *Stoddard* v. *Kimball,* 6 Cush. 469. The bond provides, not for a debt due from Valentine to another person, but for all demands, acceptances, &c., of the firm, for which Valentine is in anywise responsible. The language of the bond can hardly be otherwise construed than as a recognition of the fact that he was a surety on certain contracts of the firm, and was to be indemnified and protected as such.

In *Wallis* v. *Carpenter,* above cited, the defendant guarantied the performance of an award which required of another person the payment, among other things, of certain sums due from that person and the plaintiff jointly, to two creditors named in the

award. In that case, as in this, an attempt was made, by discharging one of these debts, to place the creditor in the position of the plaintiff, and to enable him, by suing in the plaintiff's name, to obtain the benefit of the guaranty. But it was held that the creditor could not thus assume the rights of the nominal plaintiff, or be substituted for him, so as to avail himself of the indemnity. In the present case, as in *Wallis* v. *Carpenter*, the plaintiff has been fully and effectually released from the debt for which he was liable, the only difference being that he obtained such release by the payment of $500. In this case, as in that, the suit is brought in the name of the obligee, but for the benefit of a creditor who seeks to assume the rights, and substitute himself in the place, of the nominal plaintiff.

In *White* v. *French*, 15 Gray, 339, the bond was given, not for the protection of a surety against the necessity of paying the debt of his principal, but to indemnify and save harmless a deputy sheriff " of and from all suits, damages and costs " to which he might become liable by reason of attaching certain property upon a suit of the obligor. A suit had been brought by the real owner of the property, and judgment recovered and execution issued against the officer. It was held, in accordance with the decision in *Gilbert* v. *Wiman*, 1 Comst. 550, that, under a bond conditioned to save the obligee " from liability or legal charge, and from all suits," a mere judgment against the obligee would be " sufficient foundation to recover the amount." Upon a bond for indemnity against the payment of a specific and definite debt, it is immaterial that the debt has passed into a judgment. *Aberdeen* v. *Blackmar, ubi supra.* The claim of a surety upon his principal is for reimbursement only; and, upon the view which we have taken, the plaintiff's position is that of a surety for a specific debt.

The result therefore is that the amount of the judgment in the suit upon the drafts, with interest, is not the true measure of the plaintiff's damages, but that they must be limited to the amount of the loss and damage actually sustained, which, as the facts are presented in the bill of exceptions, we understand to be the sum of $500, with interest.           *Exceptions sustained.*