CHARLES ROBINSON & another *vs.* GEORGE W. SIMMONS & another.

Suffolk.    January 27, 1892. — March 2, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Partnership — Distribution of Profits — Discharge of Mortgage of Intestate.*

Three partners in making up their accounts figured interest upon the share of each partner in the capital, and received such interest as part of the expenses of the business before the profits were divided.    On a bill in equity to ascertain the balance due to three of the heirs of one of the partners who had deceased, it was *held* that interest was not to be paid or credited as part of the expenses before computing profits, after the time when the surviving partners had ceased to employ the whole or the principal part of the capital of the intestate as the basis of their business.

The rule that, in the absence of any expressed intent, debts contracted by a testator or by an intestate, although secured by mortgage, are to be paid out of his personal property to the exoneration of his real estate, applies where a mortgage was paid out of partnership moneys before an administrator was appointed, and the widow of the deceased partner, among others, requested one of the defendants to pay it "out of any available assets of the estate of the deceased, the amount of the mortgage to be allowed him in his settlement with the administrators when appointed."

Where the recommital to the master did not contemplate a report upon a point upon which it was assumed that there was no controversy, the court considered the matter in the second decision as justice required it.

BILL IN EQUITY, filed on March 25, 1884, by two of the administrators of the estate of George W. Simmons, against the

surviving partners of the firm of George W. Simmons and Son, one of whom was the remaining administrator, for an account, and for the recovery of an amount due the estate. The case was reported 146 Mass. 167, and now comes up on questions of law arising upon the master's report upon recommittal.

By this report it appeared that the three partners, George W. Simmons, Sr., George W. Simmons, Jr., and Philip A. Spofford, in making up their accounts, figured interest upon the share of each partner in the capital, and received such interest as part of the expenses of the business before profits were divided. It was claimed by the dissenting heirs of George W. Simmons, that in ascertaining the balance due them respectively from August 27, 1883, when the surviving partners ceased to employ the whole or the principal part of the capital of the intestate, the account should be made up on the same basis. The other question presented by the report was whether the estate of the widow of George W. Simmons was to be charged with one third of the amount of a mortgage paid off by the firm, in pursuance of an agreement to which the widow was a party.

Hearing before *Holmes*, J., who reserved the case for the consideration of the full court.

*R. M. Morse*, for the three dissenting heirs.

*J. O. Teele*, for the surviving partners.

*F. E. Snow*, for Sally M. Simmons.

HOLMES, J. This case was recommitted to the master after the decision in 146 Mass. 167, to ascertain the balance due to the three dissenting heirs of George W. Simmons on August 27, 1833, from the surviving members of the firm of George W. Simmons and Son. It now comes before us upon the master's supplemental report, which raises two questions. The first is whether, in ascertaining the balance, before computing profits, interest on George W. Simmons's capital is to be paid or credited as part of the expenses of the business.

In our opinion, interest should not be paid. It was not contemplated by the court in the former decision; on the contrary, profits were allowed up to August 27, 1883, as an alternative for interest, as very plainly appears from the language of Chief Justice Morton. This seems to us just. The mode of dealing under the old partnership agreement has nothing to do with the

matter, both because the money of the deceased partner was used and is to be paid for wholly outside of that agreement, (*Barfield* v. *Loughborough*, L. R. 8 Ch. 1, 4,) and because the situation now is different. Then the firm had the benefits of the membership of the partner, and his money was capital, taking the risks of capital, and postponed even to advances by a partner. *Miller's River National Bank* v. *Jefferson*, 138 Mass. 111, 112. *Barfield* v. *Loughborough*, L. R. 8 Ch. 1, 5. After his death the interest of his estate was more like a debt, subject only to debts to third persons contracted in his lifetime. *In re Beater*, 4 DeG. F., & J. 488. The liability of the surviving members is simply to make compensation for the money they have used. It seems pretty plain that in England a claim like that made by the dissenting heirs would not be listened to. *Yates* v. *Finn*, 13 Ch. D. 839, 840. *Heathcote* v. *Hulme*, 1 Jac. & W. 122. *Vyse* v. *Foster*, L. R. 7 H. L. 318, 336. Lindl. Part. (Am ed.) 522, note. Pollock, Part. (4th ed.) 121.

The other question presented is whether the estate of the widow of George W. Simmons is to be charged with one third of the amount of a mortgage paid off by the firm in pursuance of an agreement to which the widow was a party. This question could not arise in this suit, which is primarily a bill for an account by the administrators of a deceased partner, but for the decision explained on the last page of the former opinion, to make a decree for a payment to the dissatisfied children of George W. Simmons directly. At that stage of the case it was assumed that there was no controversy upon the point now raised, and the recommittal to the master did not contemplate a report upon it (pp. 180, 181). Nevertheless, as justice requires it, we have considered the matter.

In the former decision it is said that the dissenting heirs should be charged with two sevenths of the sum paid (p. 181). As there were seven of them, this means that one third or seven twenty-firsts was assumed to fall upon the widow, leaving three sevenths of the remaining two thirds, or six twenty-firsts, equal to two sevenths, to fall upon them. We think that this is right. The mortgage was to secure a note given by Mr. Simmons, and the general rule of law, in the absence of any expressed intent, is that debts contracted by a testator or by an intestate, although

secured by mortgage, are to be paid out of his personal property, to the exoneration of his real estate. *Plimpton* v. *Fuller*, 11 Allen, 139, 140. *Hewes* v. *Dehon*, 3 Gray, 205, 206, 207. *Staigg* v. *Atkinson*, 144 Mass. 564, 571. *Cope* v. *Cope*, 2 Salk. 449. Suppose, then, that the case were simply that this mortgage had been paid by the administrators, they would have done no more than their duty. Pub. Sts. c. 124, § 5, would have no application, and the widow would be entitled to her dower in the whole land. *Hildreth* v. *Jones*, 13 Mass. 525. *Brown* v. *Lapham*, 3 Cush. 551, 554. *McCabe* v. *Swap*, 14 Allen, 188, 191. *King* v. *King*, 100 Mass. 224, 225. *Hastings* v. *Stevens*, 9 Foster, 564, 572. *Henagan* v. *Harllee*, 10 Rich. Eq. 285. But she would be entitled to nothing more, although, inasmuch as she was entitled to one third of the personalty absolutely, (Pub. Sts. c. 135, § 3,) the application of the personalty in that way would make her pay a larger proportion of the mortgage debt than her life interest in the land bore to the whole land. In this state of things it would be impossible for her to elect to take dower in the equity of redemption only, and to receive a proportionately larger share of the personal estate, or to claim to be subrogated to the mortgage, or any part of it, because the mortgage had been paid out of the fund ultimately liable. The change in her position would be an accidental consequence of a rule established in a different state of the law of distribution, but upon considerations having nothing to do with that.

In the present case, the transactions were a little more complicated than in the case we have supposed, but that is what they come to. The mortgage was paid out of partnership moneys before an administrator was appointed, but the widow, among others, requested the defendant George W. Simmons to pay it "out of any available assets of the estate of George W. Simmons, deceased, . . . the amount of the mortgage to be allowed him in his settlement with the administrators of the estate when appointed." This was an assent to the personal estate being applied in that way, an assent which, as we have said, would not have been necessary if administrators had been appointed at the time.

The heirs had conveyed the land which was subject to this mortgage, and had agreed to pay the mortgage. It is argued

that the request just mentioned was only by way of carrying out their agreement, that the payment is to be regarded as a payment by the heirs, the defendant Simmons advancing the money to them, and that therefore the widow had her choice to take dower in the value of the equity, or to pay in the proportion of her interest in the land, and take dower in the whole, as provided by Pub. Sts. c. 124, § 5. But the agreement in terms contemplates an application of the personal estate to the payment; and this being a proper course of administration, it is a mere perversion to give it any other than its natural meaning. It is unnecessary to consider whether, if the heirs had paid the mortgage, they could have called on the personal estate to exonerate them, — a question on which there are dicta in *Haven* v. *Foster*, 9 Pick. 112, 133, 134, and *Wood* v. *Fenwick*, Prec. Ch. 206, which perhaps do not cover this case.            *Decree accordingly.*