WILLARD A. BULLARD, executor, *vs.* EMILY P. S. MOOR & others.

Middlesex.   January 23, 1893. — March 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Liability of Heirs after Settlement of Estate — Covenant — Statute — Bar — Ratification — Measure of Damages.*

A testator gave a fund in trust for his wife, directing the trustee to pay over to her what she desired, and, upon her death, to dispose of it according to her will; but if she made no will, then to pay one half of the fund to his "heirs at law then surviving, they taking by right of representation," and the other half to his wife's heirs, ascertained in the same manner. The wife agreed with his heirs, then consisting of a brother, a sister, and the children of deceased brothers, not to divert the fund from them by will. Subsequently the sister died, leaving a son and a daughter, and the brother then covenanted with the wife for seven thousand dollars to protect her from her agreement and to obtain for her a release from such heirs. After some of the children of the deceased brothers had given him formal releases, and others had accepted parts of the money, the brother died unmarried, childless and intestate ; and the sister's daughter, as his administratrix, ratified his covenants and releases, and paid other portions of the same money to the rest of the brothers' children, but she gave no release and accepted none of the money herself    The wife afterwards died, disposing of the entire fund by will away from her husband's heirs, and on suit brought by the heirs of the testator, her agreement was enforced as to the sister's children, who alone were not estopped. Suit was then brought by the executor of the wife against the heirs of the brother, after his estate had been settled by his administrators, to charge them on his agreement with the wife.   *Held*, that the omission of the plaintiff to present his claim to the Probate Court, and to obtain an order that the administrators of the brother's estate should retain sufficient assets to satisfy it, under the Pub. Sts. c  136, § 13, was not a bar to a suit against the heirs under the Pub. Sts. c. 136, §§ 26, 27.  *Held, also,* that the ratification by the administrators of the brother's agreement with the wife bound his heirs also, and that the measure of damages for the breach of the agreement was not limited to the seven thousand dollars paid by the wife, but included the whole loss to her estate, if not in excess of the sum received from the brother's estate by his heirs.

BILL IN EQUITY, brought under the Pub. Sts. c. 136, § 26 *et seq.*, by the executor of the will of Caroline A. Wood, against the heirs at law and next of kin of Charles Wood, to charge them on a contract made by Charles Wood, whereby he agreed to pro-

tect the plaintiff's testatrix from a certain contract entered into by her. Hearing before *Allen*, J., who reported the case, with the findings of the single justice in the case of *Wood* v. *Bullard*, 151 Mass. 324, for the determination of the full court, in substance as follows.

In August, 1877, Caleb Wood died childless, leaving a widow, Caroline A. Wood, and a will, wherein he devised the residue of his estate, amounting to more than $300,000, to a trustee to invest the same and pay over to his widow such sums or parts thereof as she might from time to time desire, and upon her decease to dispose of the trust fund then remaining as she might by her will direct; and in case she should fail to make a will, then to pay at her decease one half of said trust fund to his heirs at law then surviving, they taking by right of representation, and the other half to the wife's heirs, ascertained in the same manner.

His heirs at law at the time of his death were Charles Wood, a brother, Abigail W. Smith, a sister, and the defendants Amasa E. Wood, Amanda L. Minor, Charles N. Wood, Levi A. Wood, Lurena A. Hudson, Marcella M. Wood, and Lyman M. Wood, nephews and nieces, the children of two deceased brothers.

As some of the heirs at law had declared their intention of contesting the probate of the will, his widow, on September 24, 1877, entered into an agreement under seal with the heirs, wherein she covenanted that within two months from the probate of the will she would pay over to the said Abigail W. Smith the sum of five thousand dollars; and " that I will not make any testamentary disposition of the trust fund created under said will, and remaining at my decease, that shall prevent one half of the said trust fund remaining at my decease from descending to the said heirs, or their legal representatives, exactly as it would descend to said heirs by the terms of said will should I make no will, and that I will do no act which will prevent one half of said trust fund as shall remain in the hands of the trustee at my decease from going to the said heirs."

The will was accordingly proved and allowed, and the five thousand dollars duly paid to Mrs. Smith.

On April 10, 1879, Charles Wood, the testator's brother, entered into an agreement under seal with the testator's widow, which is the subject of the present suit, reciting the above mentioned agreement, and that she was dissatisfied therewith, and

alleged it to be illegal, wherefore, in consideration of seven thousand dollars paid to him by her, "he does hereby cancel, annul, and forever discharge and release said contract, and he covenants and agrees with her, and her heirs and executors, to protect her from said contract, and that no claim against her or her estate shall be made under the same by any person, and that no objection shall be made on account of said contract to any will she has made or may make. And he further covenants that he will procure from the heirs of Caleb Wood, named in said contract, a release to said Caroline of said contract and all rights under the same."

The former agreement was thereupon surrendered by Charles Wood to Caroline A. Wood, and was found among her papers after her death, cancelled, the signature being cut out, and the words "cancelled and surrendered" written across the instrument; but Charles Wood did not obtain a release from all the parties with whom Caroline contracted. On January 21, 1882, Abigail W. Smith, who resided in Vermont, died, leaving as her heirs the defendants Emily P. S. Moor and Charles W. Smith, her children. On December 11, 1884, Charles Wood died childless and unmarried, leaving a will, which, on January 21, 1885, was refused admission to probate, and leaving as his heirs at law the above named nephews and nieces of Caleb Wood, and the above named two children of Abigail W. Smith, all of whom are the individual defendants in this case. On December 6, 1886, Caroline A. Wood died, leaving a will, wherein she disposed of all the property in the hands of the trustee, which then amounted to about two hundred and sixty thousand dollars, away from the heirs of her husband. The will was duly admitted to probate, and the plaintiff, Willard A. Bullard, who was then trustee under the will of Caleb Wood, being named therein as executor, qualified as such.

On May 10, 1887, Charles N. Wood, Emily P. S. Moor, Allen L. Wood, Edson A. Wood, Lyman M. Wood, Marcella M. Wood, Lurena A. Hudson, and Amanda L. Minor, who were all heirs at law of Caleb Wood and also of Charles Wood, and are the defendants in the present suit, gave notice to Bullard that they would not contest the will of Mrs. Wood, but that they should assert their claims under her contract dated September 24, 1877, and on May 31, 1887, brought suit against Willard A. Bullard,

the present plaintiff, as trustee under the will of Caleb Wood and executor of the will of Caroline A. Wood, and against Charles W. Smith. Subsequently Charles W. Smith was struck out as a defendant, and became a party plaintiff.

The defences to this suit were the release and agreement given by Charles Wood, dated April 10, 1879, formal releases given by three of the nephews, the acceptance by others of the nephews and nieces of the money paid by Mrs. Wood for the release and agreement by Charles Wood under circumstances constituting an estoppel or an accord and satisfaction, and the death of Mrs. Smith before that of Mrs. Wood, which, it was contended, had the effect to cut off any claim on the part of her two children. The plaintiffs' replication alleged that the release by Charles Wood was given when he was of unsound mind; and this question was submitted to a jury, who disagreed. All other questions of fact were tried before a single justice, who found that the administrators of Charles Wood had ratified the release and transaction with Mrs. Wood, subject to the question of law whether administrators can ratify a reasonable agreement made by an insane intestate, and found against the plaintiffs, and reported the case for the determination of the full court.

On April 1, 1890, the decision of the full court was given, dismissing the bill as to all the plaintiffs, except Mrs. Moor and Charles W. Smith, and directing a decree in favor of those two. See 151 Mass. 324.

On November 21, 1890, Emily P. S. Moor having been appointed administratrix of the estate of Abigail W. Smith in Massachusetts, was, as such administratrix, admitted as a party plaintiff in that suit, and on December 4, 1890, a final decree was entered, supplemented on May 16, 1891, by a decree fixing the amount to be paid in satisfaction of the former decree at $59,874.87, which, with expenses incident to the defence of that suit, amounting to $4,005.74, was on May 20, 1891, paid by Bullard, as executor, to Emily P. S. Moor, as administratrix of the estate of Abigail W. Smith.

On May 5, 1885, John D. Lovell and Mrs. Moor were appointed administrators of the estate of Charles Wood, and the estate was settled and divided by them according to a written agreement among the heirs. On April 1, 1890, the date of the decision of the full court in *Wood* v. *Bullard*, there remained in the hands

of the administrators the sum of $6,303.42; and the real estate which descended to the heirs, and the income derived therefrom, remaining undivided on that date, amounted in value to $4,932.90.

On May 20, 1890, before the final decree in *Wood* v. *Bullard* had been entered, the estate of Charles Wood had been fully administered; but by virtue of agreements under seal with the heirs, the administrators held sufficient assets to meet the plaintiff's claim. The whole amount paid to the heirs from the estate of Charles Wood was $152,543.62.

The present suit was brought on May 21, 1891, the money paid to Mrs. Moor, under the decree in *Wood* v. *Bullard*, then remaining in her hands; but no application was ever made to the Probate Court by the plaintiff in this suit for an order that the administrators of the estate of Charles Wood should retain funds to meet a claim under this agreement, nor was such an order ever passed.

The defendants contended that Charles Wood was of unsound mind at the time of executing his agreement with Caroline A. Wood, dated April 10, 1879, which question of fact, at the request of the parties, was reserved for further determination, if in the opinion of the full court it becomes material; and, further, that, independently of that question, the plaintiff is not entitled to maintain this bill.

*S. Hoar*, (*W. Sullivan* with him,) for the plaintiff.

*R. M. Morse*, (*G. W. Parke* with him,) for the defendants Mrs. Moor and Charles W. Smith.

*M. Morton*, for Charles N. Wood.

HOLMES, J. This is a bill in equity, brought under Pub. Sts. c. 136, § 26 *et seq.*, by the executor of the will of Caroline A. Wood against the heirs and next of kin of Charles Wood, to charge them on a contract made by Charles Wood in respect of the sum paid out in the suit of *Wood* v. *Bullard*, 151 Mass. 324, 335. There is no question that the sum which the present plaintiff was compelled to pay in that suit was a claim against which Charles Wood covenanted to protect Caroline. The main questions are whether this proceeding is open to the plaintiff, and, if it is, whether the defendants are entitled to go to trial on the sanity of Charles Wood at the time he made the agreement. There is also a question of the measure of damages.

Charles Wood covenanted four things : to protect Caroline Wood from a contract of hers under which her estate was compelled to pay in *Wood* v. *Bullard ;* that no claim should be made under that contract against her or her estate ; that no objection should be made on account of it to her will ; and to procure a release to Caroline from her contractees.   Charles Wood did not procure a release from all the parties with whom Caroline con tracted, but she had the instrument in her possession seemingly cancelled, and heard nothing of any claim on it during her life, nor was any claim made until May 10, 1887, after the two years statute had run against the estate of Charles.   The suit of *Wood* v. *Bullard* was brought on May 31, 1887.   The decision of the single justice was against all the plaintiffs, that of the full court was against all the plaintiffs but two.   The decision in favor of the claim of those two was not announced until April 1, 1890, when the administrators of Charles Wood had only $6,303.42 in their hands, and that decision was not in favor of the two in the capacity in which they sued ; so that there was no valid claim made until an amendment was allowed on November 21, 1890, at which date the administrators had fully administered.   The claim was paid on May 20, and this suit was brought on May 21, 1891.

It is not argued seriously that the present claim against the heirs was barred by the running of the two years' statute.   The covenant to protect Caroline Wood was a distinct obligation, (*Badger* v. *Titcomb*, 15 Pick. 409, 413,) which was not broken until long after the two years had elapsed. *Valentine* v. *Wheeler*, 122 Mass. 566, 568. *Aberdeen* v. *Blackmar*, 6 Hill, (N. Y.) 324. But it is said that, under Pub. Sts. c. 136, § 13, the plaintiff might have presented his claim to the Probate Court, and might have obtained an order that Charles Wood's administrators should retain assets to satisfy it, and that a neglect to take that proceeding is a bar to a suit against the heirs under § 26 *et seq.* *Pratt* v. *Lamson*, 128 Mass. 528.   In *Ames* v. *Ames*, 128 Mass. 277, it was held that the Gen. Sts. c. 97, § 8, did not apply to a contract like this while it still was uncertain whether anything ever would be due under it, and if that case applies to the corresponding section of the Public Statutes it governs this.   But it is said that the amendment incorporated from St. 1879,

c. 71, corrects that decision. As it reads now, "a creditor of the deceased" may present his claim, and if it appears "that such claim is or may become justly due," the court is to order assets to be retained. The words "or may become" have been inserted.

But the statute must be construed reasonably. It cannot have been intended to enable any one, who has an outstanding contract made by a deceased person, to suspend the settlement of the estate indefinitely, without regard to the probability of anything becoming due upon the contract, and when it still is impossible for the Probate Court to form any estimate of what amount should be retained as "sufficient to satisfy the same" in the words of the statute. The meaning of the word "creditor," retained from the General Statutes, has not been changed so far as that. Furthermore, although we do not rely on this circumstance as sufficient in itself, if the plaintiff might have applied to the Probate Court, still, at the earliest date when he had the slightest reason for doing so, his claim could not have been provided for in full, and the amount to be reserved, if any, was a pure matter of speculation, and remained so until the estate was fully administered. See *Wood* v. *Bullard*, 151 Mass. 324, 332. We are of opinion that the plaintiff was not barred of his present proceeding by his failure to apply under §. 13. See *Clark* v. *Holbrook*, 146 Mass. 366, 368.

The next question is whether the defendants have a right to try the sanity of Charles Wood. It is found as a fact that his administrators ratified his agreement, if administrators can ratify a reasonable agreement of an insane intestate. This means, of course, that they effectually ratified, subject to the question of law mentioned. The grounds of the finding are not stated, and we cannot inquire whether they had sufficient knowledge, as we are asked to do. There is no doubt, and it is not disputed, that administrators can ratify such a contract. For that purpose they represent the person of their intestate restored to sanity. *Wood* v. *Bullard*, 151 Mass. 324, 329.

But it is said that, although the ratification estops the administrators, it is of no effect against the heirs. Ratification is not estoppel, but it is election, a different conception. *Metcalf* v. *Williams*, 144 Mass. 452, 454. When it operates, it operates not against the person ratifying, but on the contract, making it

as if perfect from the beginning.   See *Dempsey* v. *Chambers,* 154
Mass. 330, 332.   It would be anomalous if the contract could be
rehabilitated as to one class of persons, and yet remain invalid
as to another.   Still, if the question arose at common law on a
covenant which bound both heirs and administrators, it might be
difficult.   See *Breckenridge* v. *Ormsby,* 1 J. J. Marsh. 236, 248 ;
*Langley* v. *Langley,* 45 Ark. 392, 397.   Heirs represent the
person of the deceased, as well as executors or administrators.
*Day* v. *Worcester, Nashua, & Rochester Railroad,* 151 Mass. 302,
307, 308.   Originally they alone represented him in the secular
courts, and the executor had a different function.   Bract., fol.
407 b, 61 a, b.   In *Clark* v. *Holbrook,* 146 Mass. 366, 368, it was
said that the heirs' liability still was a liability on the con-
tract.   But however that may be, even apart from our statutes,
executors and administrators have come to represent the person
of the deceased " more actually " than do the heirs.   Co. Lit.
209 a.   Wms. Exrs. (8th ed.) 1731.   Although at common law
an heir could not plead that there was an executor who had as-
sets, still, as between him and the executor, the personal estate in
the hands of the latter was, as it still is, the primary fund for the
payment of debts.   Wms. Exrs. (8th ed.) 1669.   *Robinson* v.
*Simmons,* 156 Mass. 123, 125, 126.   Now the executor or admin-
istrator in ordinary cases is the only person liable, and the liabil-
ity of the heirs is governed wholly by statute, standing alongside
of that of devisees, legatees, and next of kin, as a mere liability
to restore an amount not exceeding what they have received from
the deceased.   Pub. Sts. c. 136, §§ 26, 27.   See *Clark* v. *Holbrook,*
*ubi supra.*   It does not exist except when the executors and ad-
ministrators cannot be sued, and the same claim, if it had hap-
pened to accrue earlier, so that it could have been sued upon
against the administrators, would have intercepted the property
before it came to the defendants' hands.   For these reasons we
are of opinion that the ratification of the contract by the admin-
istrator bound the defendants.

The last point argued for the defendants is, that at all events
the measure of damages is the $7,000 paid by Caroline Wood to
Charles Wood for his covenant.   Her earlier contract was that
she would not " make any testamentary disposition of the trust
fund " left by her husband, " and remaining at my decease,"

from going as the trust fund would go under her husband's will, so far as she had not required the trustee to pay it over to her. It is said, and it is true, that she could have made her agreement ineffectual by calling on the trustee for funds, and using them in her lifetime. But the conclusion does not follow that her. failure to do so must cut down the damages. It was to save her from the necessity of doing so, presumably, that the new agreement was made. During her life she had no actual knowledge of any claim on it, or ground to suspect that there was any other than a formal one for not procuring releases from all the heirs. She had her own contract in her pocket, with the signature torn off, and undoubtedly never dreamed that it still might be held to be an existing obligation. Charles Wood's covenant was a covenant of indemnity, inviting her to the very repose which she practised, and we see no reason why his heirs and next of kin should not make good the whole loss to her estate, subject to the limit indicated in § 27. *Smith* v. *Way*, 6 Allen, 212. *Valentine* v. *Wheeler*, 122 Mass. 566, 570. *Mott* v. *Hicks*, 1 Cowen, 513, 539, 540. *Howard* v. *Lovegrove*, L. R. 6 Ex. 43.

*Decree for plaintiff.*