## Geiger's Estate

*Theodore Lane Bean*, for petitioner; *Samuel D. Conver*, contra.

HOLLAND, P. J., May 16, 1933.—This case arises upon a petition by one George Hanig, who claims to be a creditor of decedent, to open the adjudication of this court upon an executors' account, so that petitioner may prove his claim against decedent's estate, and answer thereto.

The history of the case is as follows: The first and final account of First National Bank of Lansdale and Lillian Geiger, executors of the will of William

A. Geiger, deceased, was audited by this court on May 29, 1931. No claims were presented at the audit, and it was found that all debts of decedent of which accountants had knowledge had been paid. In the adjudication, we awarded to Lillian Geiger, testator's widow, who survived him, the personal articles and furniture bequeathed to her in the will and also the balance of income plus an amount to constitute interest since testator's death on a trust fund set up in the will for her. The balance we awarded to the accountant bank, in its capacity as testamentary trustee of a $1,000 legacy in trust to maintain testator's cemetery lot and a $100,000 legacy in trust for the widow for life. The insufficiency of the estate to pay these two legacies in full rendered necessary their award pro rata. The adjudication was confirmed nisi on June 16, 1931, and, no exceptions thereto having been filed, the confirmation became absolute, according to rule, 10 days thereafter. Counsel for accountants having so requested, the adjudication directed him to prepare a schedule of distribution, which was done, certified to be correct and in conformity with the adjudication, filed, and approved by the court on October 29, 1931.

The petition now under consideration was filed on May 6, 1932. Because of the novelty of the proceeding, we will examine its allegations in detail, and they are:

That petitioner and Joseph A. Geiger, a son of decedent, were copartners in the wholesale florist business in New York City, and on June 7, 1928, both executed a lease of a store on the first floor of premises 112 West 28th Street, New York City, from Mike B. Spanakos Realty Corporation. A copy of said lease is attached to the petition, marked exhibit "A".

That petitioner assigned his interest in said partnership and in said lease to Joseph A. Geiger by agreement dated April 1, 1929; and Joseph A. Geiger therein agreed to assume petitioner's liability under said lease and covenanted to indemnify petitioner against any loss arising out of a breach of the agreement. A copy of said agreement is attached to the petition, marked exhibit "B".

That at the time of the execution of said agreement, petitioner was unwilling to make the assignment without further security for his liability under said lease, and thereupon Joseph A. Geiger had his father, the decedent, execute an agreement of indemnity. This agreement is also dated April 1, 1929, and a copy thereof is attached to the petition, marked exhibit "C".

That subsequent to petitioner's withdrawal from the business it was operated by Joseph A. Geiger "for a considerable length of time"; that all rents due under said lease were paid to January 1932, inclusive, but that monthly rentals of $450 each due February, March, and April 1, 1932, less $100, have not been paid; and that the lease continues in force until January 31, 1934, with monthly rentals of $450 due on the first of each month.

That the said lessor has instituted an action against petitioner and Joseph A. Geiger for a money judgment of $800, representing rent due for February and March 1932, less $100 paid on account; that Joseph A. Geiger has defaulted in answering said action, and, while petitioner has answered, he believes himself in fact defenseless.

That subsequently a similar action for the $450 April 1932 rent was begun against both parties, and a verdict has been rendered therein against petitioner and judgment will be entered soon.

That petitioner knew nothing of the accounting in decedent's estate, no notice of any kind having been given him of its administration, although the president of the accountant bank was a witness to decedent's indemnity agreement.

That decedent became and is now indebted to petitioner "in the sum of $450 a month for the months of February, March, and April 1932, less $100, with a contingent liability for the balance of the term of the lease, $9,450."

The accountants, and the accountant bank as testamentary trustee, filed their answer to the petition, generally denying knowledge of the material averments of the petition and demanding proof thereof if essential; averring that the means of proof are under the exclusive control of the petitioner; admitting that the president of the accountant bank may have been a witness to the indemnity agreement, but denying that he had knowledge of its nature and the rights of the parties thereunder and of any claim of petitioner against decedent's estate; admitting that no notice of the administration of the estate was given to petitioner; denying decedent's indebtedness to petitioner in the amount claimed; averring that at the time of decedent's death he was under no liability to petitioner, and that the first default in the payment of rent did not occur until February 1, 1932, more than 3 months after the estate was finally adjudicated; averring that all notices required by law were published, that petitioner gave no notice to accountants of his claim, that no notice was given him of the filing of the account because he was not known to have a claim, and that because petitioner did not present his claim to accountants or at the audit he is now precluded from having the adjudication opened and from presenting his claim; and averring finally that the agreement of indemnity is not now enforceable because it does not specifically bind decedent's heirs, executors, administrators, and assigns.

Although it would seem that discussion of the questions raised should begin with an inquiry into the indemnity agreement itself and a determination whether (a) liability thereunder continues after the death of the indemnitor in the absence of special provisions to that effect; and (b) assuming the facts as alleged to have taken place, do they constitute a breach; however, because of the conclusions we have reached on the other questions involved, we shall take them up first.

The petitioner bases his action upon section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, as equivalent to a petition for review, and also upon the inherent equitable powers of the orphans' court, aside from the statutory provision mentioned.

Section 48 of the Fiduciaries Act of 1917, P. L. 447, 514, reads as follows:

"Within five years after the final decree confirming the original or supplementary account of any fiduciary, which has been or may be hereafter passed upon, petition of review being presented by such fiduciary or his legal representatives, or by any person interested therein, alleging errors in such account, or in any adjudication of the orphans' court, or any report of an auditor of such account, which errors shall be specifically set forth in said petition of review, said petition and errors being verified by oath or affirmation, the orphans' court shall grant a rehearing of so much of said account, adjudication, or auditor's report as is alleged to be error in said petition of review, and give such relief as equity and justice may require, by reference to auditors, or otherwise, with like right of appeal to the proper appellate court as in other cases: Provided, That this act shall not extend to any cause when the balance found due shall have been actually paid and discharged by any fiduciary."

This section is a reënactment of section 1 of the Act of October 13, 1840, P. L. (1841) 1, repealed by the Fiduciaries Act, enlarging the application of the 1840 act in a manner of no moment here. Under this legislation, it has often and consistently been held that the preëxisting discretionary power of the orphans' court to review its own decrees was thereby made mandatory upon the court in cases of relief sought for errors of law appearing on the face of the

record, when, as these acts also provide, the petition applying for relief is filed within the 5-year period and distribution has not been made: Bishop's Estate, 10 Pa. 469; George's Appeal, 12 Pa. 260; Jones's Appeals, 99 Pa. 124; White's Estate, 249 Pa. 115; Given's Estate, 292 Pa. 483.

The only allegation in this petition which might by any concept, however remote, serve to bring the proceeding within section 48 of the Fiduciaries Act is that averring failure to give petitioner notice of the administration of decedent's estate. The record shows that the notices by advertisement, by the executors of the granting of letters and by the register of wills of the filing of the account, were duly published as required by the Fiduciaries Act, secs. 10 and 46 (c). Respondents admit that no actual notice was given petitioner; however, no such notice was due him. It was held in Lorch's Estate, 284 Pa. 500, followed in Downing, Exec'r, v. Felheim et al., 309 Pa. 566, that under section 46 (c) no actual notice to creditors is required to be given unless demand has already been presented, when so required by the rule of court, and petitioner admits that he gave no notice of his claim.

As for the allegation that the president of the accountant bank was a witness to the indemnity agreement in question, from which we are to infer that the corporate fiduciary had knowledge of petitioner's claim, he was a witness to the decedent's signature, and it cannot necessarily follow that he therefore knew the contents of that document or the rights and liabilities it created; furthermore, even if he did know, the rule stated in Lorch's Estate, supra, would still not require actual notice of the audit to have been given petitioner. This leaves petitioner nothing on which to base his contention that section 48 makes mandatory upon this court the relief he seeks.

Petitioner also addresses himself to the inherent equitable powers of the orphans' court, irrespective of statute, which we shall now consider.

The first of the ordinances of Lord Chancellor Bacon, "for the better and more regular administration of justice in the chancery, to be daily observed, saving the prerogative of the court", pertains to review and runs thus:

"1. No decree shall be reversed, altered, or explained, being once under the great seal, but upon bill of review, and no bill of review shall be admitted, except it contain either error in law, appearing in the body of the decree, without further examination of matters in fact, or some new matter which hath risen in time after the decree, and not any new proof which might have been used when the decree was made; nevertheless, upon new proof, that is come to light after the decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be grounded by the special license of the court, and not otherwise." The rule there laid down has been restated so frequently, with slight modifications in phraseology, by our Supreme Court in considering petitions for review in the orphans' court, that we have attempted to trace its first such application in Pennsylvania. Apparently Mr. Justice Lewis was first to rely upon it in Riddle's Estate, 19 Pa. 431 (1852); at least none of the earlier Pennsylvania cases we have been able to find have referred to it. Since then, the rule has become crystallized in substantially these words: ". . . an account thus settled and confirmed can only be reviewed as a matter of *right*, for error of law apparent on the face of the record, or for new matter which has arisen since the decree. As a matter of *grace* a review may be granted for new proof, discovered after the decree, which proof could not possibly have been used at the time when the decree was made: . . ." Milligan's Appeal, 82 Pa. 389, 395. Out of the long line of cases approving, if not specifically restating, this rule we mention: Bishop's Appeal, 26 Pa. 470; Russell's Administrator's Appeal, 34 Pa. 258; Hartman's Appeal, 36 Pa. 70;

Green's Appeal, 59 Pa. 235; Scott's Appeal, 112 Pa. 427; Priestley's Appeal, 127 Pa. 420; Bailey's Estate, 208 Pa. 594; Nixon's Estate, 239 Pa. 270; Troutman's Estate, 270 Pa. 310; Willing's Estate, 288 Pa. 337; Bailey's Estate, 291 Pa. 421.

Petitioner contends that the accrual to him of a cause of action on decedent's bond of indemnity, by the happening of a contingency (the breach of that agreement) after the adjudication was confirmed, is such "new matter which has arisen since the decree" as to be within the rule and entitle his prayer to be granted. What constitutes such "new matter" as to come within the rule stated has not been the subject of judicial definition by the courts of this State. As many cases as there are on the question of review in the orphans' court, and as oft-repeated as the rule has been, we have searched in vain for a case where review was actually granted or even sought on the grounds of "new matter arisen since the decree". Nevertheless, we give due weight to the many expressions of approval of the rule by our Supreme Court and regard ourselves as bound to apply it in a proper case.

Is the state of facts here before us such as to entitle petitioner to the relief he seeks as a matter of right? It is well, at this point, to recall precisely what this action is, namely, a petition to open our adjudication of the account of the executors of decedent's estate, which adjudication has been confirmed absolutely, schedule of distribution filed in accordance therewith, and distribution made, so that petitioner may now present against decedent's estate a claim which has but just accrued and heretofore was admittedly contingent. The admittedly contingent nature of the claim was in the strictest sense of that term; it went both to the amount of the claim and also to its occurrence; indeed, the amount is still admittedly contingent.

Respecting our discussion of petitions for review in connection with this proceeding, petitioner contends that his petition, which, strictly, is to open and not to review, can be maintained as "equivalent to" a petition for review under section 48 of the Fiduciaries Act of 1917. It is not contended that its equivalence to review applies also in petitioner's address to the inherent equitable powers of the orphans' court. But the argument advanced treats it as a petition for review, and it appears to us profitless to attempt here to differentiate between opening and reviewing, so we shall continue the discussion on the same basis.

It seems curious that up to this late date no question of a contingent claim against a decedent's estate has ever arisen in Pennsylvania; but none has been cited either by petitioner, in his able brief giving evidence of considerable work, or by respondents; nor have we, with what we feel to have been a careful search, been able to find any. It appears to be a new question in this State.

The presenting of claims against decedent's estates is governed by section 49 (d) of the Fiduciaries Act of 1917, P. L. 447, 515, which is as follows: "No creditor of a decedent who shall neglect or refuse to present his claim at the audit of the account of the executor or administrator, held not less than six months after the grant of letters testamentary or of administration, of which public notice has been given as provided in section ten of this act, or at an audit held after actual notice to such creditor of the filing of such account, as provided in section forty-six, clause (c) of this act, shall be entitled to receive any share of the assets distributed in pursuance of such audit, whether the estate of the decedent be solvent or insolvent."

In the absence of specific provisions therein for contingent claims, the next step is to determine whether or not under this section petitioner should have presented his claim at the audit despite its contingent character at that time.

While similar statutes of some of our sister States do specifically refer to contingent claims, those of others, like our own, do not. Nevertheless, in some of these latter States it has been decided whether or not they must be presented during the administration like other claims.

The Vermont statute involved in Jones v. Cooper, Admin'r, 2 Aik. (Vt.) 54, 16 Am. Dec. 678, provided for the receiving and allowance of all claims against estates of decedents, "whether due and payable at the time, or payable at a future day." The decedent there was guardian of a minor and as such gave bond on which one Jones was surety. To save Jones harmless from liability on this bond, decedent had given him another bond of indemnity. During the administration of decedent's estate, and at a time when Jones had not suffered harm through his suretyship, he presented a claim against the estate on decedent's bond of indemnity. (A situation, in effect, as though petitioner here had presented his claim at the audit.) The court held that the claim could not be allowed because it rested in contingency, and it was uncertain whether or not any demand would ever accrue; that there existed no claim which could be proved.

Jones v. Cooper, supra, was relied upon by our Supreme Court in Chestnut Street Trust & Saving Fund Company's Assigned Estate, 217 Pa. 151, as sole authority for denying the holder of a contingent claim against a trust company the right to share in the distribution of the proceeds of the trust company's estate, which it had assigned for the benefit of creditors, because at the time of the assignment the claim was only contingent. Mr. Justice Mestrezat quotes at length the opinion in the Vermont case. While the Chestnut Street Trust Company case is not strictly in point, involving an assigned estate instead of a decedent's estate, the full approval there given to Jones v. Cooper is nevertheless an indication of what the Supreme Court would hold if confronted with our situation.

In Massachusetts, the statute of limitations for claims originally provided for the presentation to the probate court of claims "justly due", even though the claim were not presently payable. It was held, under this, in Ames et al., Exec'rs, v. Ames et al., Exec'rs, 128 Mass. 277, that if the existence of the claim depended upon a future contingency, it was not a debt within the statute. Subsequently the statute was amended to include claims which are "justly due or may become due." Even under this, it was held in Bullard, Exec'r, v. Moor et al., 158 Mass. 418, Mr. Justice Holmes speaking for the court, that the holder of a contract of indemnity, having no notice of any valid claim against which he was to be indemnified until after the estate of the indemnitor was fully administered, should not have presented his claim to have an amount reserved within the statutory period for presenting claims.

In Illinois, section 67 of the Administration Act provides: "Any creditor, whose debt or claim against the estate is not due, may, nevertheless, present the same for allowance and settlement, and shall, thereupon, be considered as a creditor under this act. . . ." Even under that provision it has consistently been held in Illinois that a contingent claim cannot be allowed: Snydacker v. The Swan Land and Cattle Co., Ltd., 154 Ill. 220; Mackin v. Haven, Trustee, et al., 187 Ill. 480; The Union Trust Co. v. Shoemaker, 258 Ill. 564; Beebe v. Kirkpatrick et al., 321 Ill. 612.

These authorities will suffice as examples of the unanimous conclusion reached in other States whose statutes do not provide for contingent claims and where the question has arisen. Relying upon the authorities cited and especially upon the approval of Jones v. Cooper, supra, in the Chestnut Street Trust Co. case,

we decide that petitioner could not and should not have presented his claim at the audit of decedent's estate.

Up to this point we agree with petitioner's contentions, but we cannot go further. So far, we have decided no more than petitioner's rights; now the question arises whether this proceeding is his proper remedy. If petitioner should have presented his claim at the audit, his failure to do so would have cost him his rights. On the other hand, from the conclusion that he need not then have presented it, it does not inevitably follow that petitioner is entitled to the relief he asks here.

Again we recall the exact nature of this proceeding: a petition to open an adjudication confirmed absolutely, so that a claim may be presented against decedent's estate after distribution thereof has been made. Petitioner's error at this point lies in assuming that because his contingent claim was not presentable at the audit, there is now no bar to its presentment against the estate, notwithstanding that all decedent's assets have been accounted for and distributed and nothing remains in the hands of the executors.

We have considered the effect of section 49 (d) of the Fiduciaries Act with respect to presenting contingent claims against estates, and now we consider it with respect to barring such claims against estates. Turning again to authorities of other States where this question has been decided under acts similar to ours, we find it to be again the unanimous opinion that such claims cannot be allowed against estates where no assets remain unaccounted for and undistributed, notwithstanding that the reason for not presenting the claim during administration was its contingent character and its consequent unprovable and unallowable status.

In Jones v. Cooper, Admin'r, supra (p. 59), the court, after holding the contingent claim not then provable, goes on to say what the claimant's remedy would be if the contingency subsequently occurred. "If, however, he [the claimant] should be made chargeable, and a debt should hereafter arise upon the bond, the personal representative of the intestate, notwithstanding the commission is closed, would still be liable, if the estate is not in fact insolvent, and assets remain after paying the debts allowed under the commission, unless the surplus estate has been distributed among the heirs by a decree of the court of probate. In such case, he will be discharged, and the heirs will be liable, to the extent of the estate, real and personal, decreed to them, in proportion to their respective shares . . .".

Neither petitioner's brief nor our own search has disclosed a single case in any jurisdiction where it was even attempted to assert a contingent claim, after its accrual, by a proceeding similar to that at bar. There are a number of cases in other States where original actions were brought, both at law and in equity, to recover on claims against decedents which were contingent during the administration of their estates and thereafter became absolute. These are the cases upon which petitioner relies to establish his contention that this petition is not barred by a statute of non-claim which does not expressly refer to contingent claims, i. e., section 49 (d) of the Fiduciaries Act. But the farthest that any of these cases goes is to hold that an action by claimant against the *distributees* of a decedent's estate is not barred by the statute of non-claim because the claim was contingent during the entire period during which claims against the estate were to be presented. In cases where the executors of decedents were joined as codefendants along with the distributees, it was held that the non-claim statute did bar recovery against them.

In Bullard v. Moor, supra, claimant's action was against decedent's heirs only, and accordingly the claim was held not to be barred. In Rankin v. City of

Big Rapids et al., 133 Fed. 670 (C. C. A., 6th), the Michigan statute did cover contingent claims, providing that they might be exhibited during the administration and the executor ordered to set aside assets with which to pay them if they became absolute within 2 years and were allowed. A contingent claim was not so exhibited and did not become absolute until after the 2-year period. The court held the action not barred because the claim was contingent during the entire period, but that was a separate suit in equity against the distributees. Leavenworth Savings & Trust Co. v. Newman et al., 52 F. (2d) 813 (1931), upon which petitioner places great reliance, does hold that a contingent claim is not barred for failure to present within the statutory period (construing the Missouri statute); yet the action wherein that was held was not, as petitioner states in his brief, an action to recover against the *estate* of a deceased guarantor; on the contrary, it was an action against his *heirs*. Throughout the long history of that case, from 1924 to 1931, it changed from an action at law to a bill in equity, was first dismissed as such, appealed, reversed, remanded, then tried and appealed again, yet at no time during the course of the litigation was it even attempted to enforce the claim against decedent's estate.

In Illinois, the question has arisen numerous times. In Snydacker v. The Swan Land & Cattle Co., Ltd., supra, and in Pearson et al. v. McBean et al., 231 Ill. 536, the actions were assumpsit and debt, against decedents' administrator and executors, respectively. It was held in both that the actions were barred by the 2-year period of limitation provided by section 70 of the Administration Act, even though contingent claims were not provided for. In Union Trust Co. v. Shoemaker, supra, the action was by bill against decedent's legatees and executors. It was held by the Supreme Court that the appellate court correctly dismissed the bill against the executor, because, all assets of decedent having been accounted for and paid out under order of the probate court, the statute barred recovery against him.

Petitioner's failure to distinguish between actions on contingent claims brought against heirs and legatees and actions to enforce such claims against the estate is shown by his brief, wherein the authorities on this question are cited in support of the repeated statement that contingent claims upon becoming absolute may be enforced "against legatees". And the authorities cited do so hold; but this petition seeks to enforce the claim against the estate, not against heirs or legatees.

Statutes of non-claim generally are for the purpose of facilitating the early settlement of estates, and section 49 (*d*) of the Fiduciaries Act is no less so. It is not a general statute of limitation which deprives petitioner of all remedy, but we see no reason for deviating from the accepted construction of similar statutes elsewhere, that the remedy against the estate is now barred thereby. It would not be reasonable for the orphans' court to be compelled to deny a contingent claim presented at the audit of an executor's account and proceed to distribute the estate; and then, when the estate is settled, upon the contingency becoming absolute, to be compelled to undo it all again and entertain the claim.

Returning to the contention that this petition is controlled by the well-settled rule respecting review in the orphans' court because the happening of the contingency is "new matter which has arisen since the decree"; whatever may constitute new matter so as to entitle a petitioner to review within the meaning of that rule, we hold that the accrual of a claim which is unenforceable against the estate is not such. What petitioner's proper remedy is, is not for us to say, but we are convinced that it is not by petition to open the adjudication in order to present his claim against the estate.

Discussion of the other questions raised, as to the liability of decedent's estate upon the bond of indemnity and whether or not a breach in the conditions of the bond has occurred, is rendered unnecessary in this proceeding by the conclusion reached.

And now, May 16, 1933, the petition is dismissed. Petitioner will pay the costs.

From Aaron S. Swartz, Jr., Norristown, Pa.