CHARLES N. WOOD & others *vs.* WILLARD A. BULLARD.

Middlesex.    January 22, 1890. — April 1, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Devise in Trust — Contingent Remainder — "Heirs at Law then surviving" — Release — Estoppel — Accord and Satisfaction.*

A testator gave a fund in trust for his wife, directing the trustee to pay over to her what she desired, and, upon her death, to dispose of it according to her will; but if she made no will, then to pay one half of the fund to his "heirs at law then surviving, they taking by right of representation," and the other half to the wife's heirs, ascertained in the same manner. The wife agreed with his heirs, then consisting of a brother, a sister, and the children of deceased brothers, not to divert the fund from them by will. Subsequently the sister died, leaving a son and a daughter, and the brother then covenanted with the wife to obtain for her from such heirs for a sum of money a release from her agreement. After some of the deceased brothers' children had given him formal releases, and others had accepted parts of the money, the brother died unmarried, childless, and intes-

tate; and the sister's daughter, as his administratrix, ratified his covenants and releases, and paid other portions of the same money to the rest of the brothers' children, but did nothing further, except in omitting to tell the wife that she did not intend to give up any personal claim against her. The wife afterwards died, disposing of the entire fund by will away from her husband's heirs. *Held*, that the bequest over was to those who were the testator's heirs at law at his wife's death, and included his sister's children. *Held, also*, that the sister's children alone were not estopped to enforce the widow's agreement as to her disposition of the fund by will.

BILL IN EQUITY against the defendant, both as trustee of the estate of Caleb Wood and as the executor of the will of Caroline A. Wood, his wife, by the heirs at law of Caleb, for the specific performance of an agreement made by her. Hearing before *Holmes*, J., who reported the case, with certain portions of the evidence, for the consideration of the full court. The facts appear in the opinion.

*R. M. Morse, Jr. & T. H. Armstrong*, (*W. E. Jewell* with them,) for the plaintiffs.

*Samuel Hoar*, (*W. Sullivan* with him,) for the defendant.

C. ALLEN, J. In August, 1877, Caleb Wood died childless, leaving a widow, Caroline A. Wood, and a will wherein he devised the residue of his estate to a trustee, in trust, to invest the same and pay over to her such sums or parts thereof as she might from time to time desire, and upon her decease to dispose of the trust fund then remaining as she might by her will direct; and in case she should fail to make a will, then to pay at her decease one half of said trust fund to his heirs at law then surviving, they taking by right of representation, and one half to the heirs at law of his wife, then surviving, they taking by right of representation.

His heirs at law at the time of his death (besides his widow, who was a statutory heir) were as follows: 1. A brother, Charles. 2. Four children of a deceased brother, Eliphalet. 3. Three children of a deceased brother, Lyman. 4. A sister, Abigail W. Smith.

As some of the heirs at law of the testator had been thinking of contesting the probate of the will, his widow, on the 24th of September, 1877, entered into an agreement under seal with the heirs, wherein she covenanted that within two months from the probate of the will she would pay over to the said Abigail W.

Smith the sum of five thousand dollars; and "that I will not make any testamentary dispositions of the trust fund created under said will and remaining at my decease, that shall prevent one half of the said trust fund remaining at my decease from descending to the said heirs or their legal representatives exactly as it would descend to said heirs by the terms of said will should I make no will, and that I will do no act which will prevent one half of said trust fund as shall remain in the hands of the trustee at my decease from going to the said heirs."

The will was accordingly proved and allowed, and the five thousand dollars duly paid to Mrs. Smith.

It is conceded that this agreement, by its terms, did not have the effect to prevent Mrs. Wood from calling upon the trustee to pay to her the whole of the trust property in her lifetime, and that, if the property had been thus paid over to her in pursuance of such a request, it would have become her own, and she might have disposed of it as she pleased. The agreement merely precluded her from making a testamentary disposition of the trust fund.

On the 10th of April, 1879, Charles Wood, the testator's brother, entered into an agreement under seal with the testator's widow, reciting the above mentioned agreement, and that she was dissatisfied therewith and claimed it to be illegal, wherefore, in consideration of seven thousand dollars paid to him by her, "he does hereby cancel, annul, and forever discharge and release said contract, and he covenants and agrees with her and her heirs and executors to protect her from said contract, and that no claim against her or her estate shall be made under the same by any person, and that no objection shall be made on account of said contract to any will she has made or may make. And he further covenants that he will procure from the heirs of Caleb Wood named in said contract a release to said Caroline of said contract and all rights under the same." The former agreement was accordingly surrendered to her by Charles Wood, in whose possession it seems to have been, and was cancelled.

On the 6th of December, 1886, Mrs. Wood died, leaving a will, wherein she disposed of all of the property in the hands of the trustee, which then amounted to about two hundred and

sixty thousand dollars, away from the heirs of her husband. Charles Wood had already died, December 11, 1884, intestate, childless, unmarried, having procured formal releases from three only out of four of Eliphalet Wood's children, dated February 2, 1880. Mrs. Smith died before Charles Wood, leaving two adult children.

The four children of Eliphalet, the three children of Lyman, and the two children of Mrs. Smith, (these all being also the heirs at law of Charles Wood,) now bring this bill in equity seeking to enforce the agreement of Mrs. Wood that she would not make any testamentary disposition of the trust fund created under her husband's will. The defences are the release and agreement given by Charles Wood, the formal releases given by three of Eliphalet's children, the acceptance by others of the plaintiffs of the money paid by Mrs. Wood for the release and agreement by Charles, under circumstances constituting an estoppel or an accord and satisfaction, and the death of Mrs. Smith before that of Mrs. Wood, which it is contended had the effect to cut off any claim on the part of her two children. The plaintiff's replication alleges that the release of Charles Wood was given when he was of unsound mind; and this question was submitted to a jury, who disagreed.

As to the three children of Eliphalet who signed formal releases to Mrs. Wood, it is conceded that no claim can now be maintained in their behalf, and that they are to be treated as out of the case.

As to the fourth child of Eliphalet, Mrs. Minor, and the three children of Lyman Wood, their claim is cut off by their acceptance of one thousand dollars each as an accord and satisfaction. It is conceded that each one of them received from the administrators of the estate of Charles Wood a sum sufficient, when taken with certain payments made to Lyman's three children by Charles Wood himself in his lifetime, to make up one thousand dollars with interest from the time when Mrs. Wood paid the seven thousand dollars to Charles Wood. The testimony and circumstances show clearly that they received these sums, not as gifts from Mrs. Wood, but on a consideration connected with the compromise agreement which she had given with reference to the allowance of her husband's will. She had already paid

all the money called for by that agreement, namely, the five thousand dollars to Mrs. Smith; and after having done so, she had paid seven thousand dollars more to Charles, of which he had in his lifetime paid certain portions to some of these children. A question had arisen early in respect to the purpose of Mrs. Wood in paying this money, and her letter to Mrs. Minor, dated August 9, 1879, showing that it was intended for the children of Eliphalet and Lyman, had been exhibited to several, if not to all, of those children. Immediately after the death of Charles, all of these children were in consultation together in Worcester, in December, 1884, with a common purpose to get this money. Three of them, being children of Eliphalet, had signed formal releases to Mrs. Wood in the lifetime of Charles. They all demanded and obtained from the administrators of Charles the payment of such sums as made up the sum of one thousand dollars to each, with interest. The suggestion in the argument, that they took it as a gift from Mrs. Wood, cannot be entertained for a moment. Without going minutely into the details of the testimony, we are satisfied from reading it that they all then knew of the agreement which she had made, and knew that Charles Wood had received this money from her upon some bargain or understanding referring to her agreement, and that they either knew all the particulars of that bargain, or at any rate had all the information in respect to it which they cared to have. If any particulars were wanting, it was because they shut their eyes and turned away their ears. Under these circumstances, their taking steps to enforce the payment of the money to them by Charles Wood's administrators, and their acceptance of it, constitute a virtual adoption by them of the bargain upon which he obtained the money from her, so far, at least, as to preclude them from enforcing her original agreement. It was equivalent to saying, Whatever he may have promised as to our giving up that agreement, we adopt it. *Kelley* v. *Newburyport & Amesbury Horse Railroad*, 141 Mass. 496, 499.

It remains to be considered whether the bill can be maintained in behalf of the two children of Mrs. Smith; one of whom is Mrs. Moor, who is also one of the administrators of the estate of Charles Wood, and the other is Charles W. Smith.

In respect to Mrs. Moor, it is contended that her claim is cut

off by reason of her transactions above referred to, in which she as an administratrix of the estate of Charles Wood took part. It is contended, and the justice before whom the cause was heard found as a fact, subject however to the question of law whether administrators of an insane intestate could so ratify, that the administrators of Charles Wood have ratified the release by him to Mrs. Wood, and the transaction in relation to it. This ratification is certainly so far effectual as to cut off any claim by the administrators or representatives of Charles Wood under the agreement of Mrs. Wood. Charles Wood executed a formal release of said contract, and if this was invalid by reason of his insanity, the ratification makes it good to this extent at least. The claim of Mrs. Moor, however, does not rest upon her rights as an heir of Charles Wood, but upon her rights as daughter of Abigail W. Smith, who was a sister of the testator.

It is not easy to see in what way her individual claim under Mrs. Wood's agreement is affected by her acts as administratrix of Charles Wood. Let it be assumed that her ratification as administratrix of the release and covenants of Charles Wood to Mrs. Wood was full and valid, both in fact and in law ; the effect of this is only to give to that instrument the same force which it would have had if its validity had never been questioned. It makes the instrument valid and effectual as an instrument signed and sealed by Charles Wood ; but it does not affect the rights of Mrs. Moor as an individual, except so far as she might claim under Charles Wood. In executing that instrument, Charles Wood did not act nor assume to act as the agent of Mrs. Smith, the mother of Mrs. Moor ; but in consideration of seven thousand dollars paid to him, he covenanted with Mrs. Wood that he would procure from the heirs of Caleb Wood a release to her of her contract. If that instrument was valid at the time of its execution, or if it was made valid by being ratified afterwards, it did not cut off the claim of any heir of Caleb Wood under Mrs. Wood's agreement, except of Charles Wood himself, unless something further should be done by which their rights would be affected. As to the three children of Eliphalet, something further was done, and they executed a formal release, by which their claim is cut off. As to the fourth child of Eliphalet and the three children of Lyman, something further was done,

and their claim is cut off by their acceptance of money, as shown above. But as to Mrs. Moor, she has received no money, and has signed no release, and her acts in a representative capacity as administratrix of Charles Wood may affect his estate and the rights of those claiming under him, but do not affect her rights as daughter of Mrs. Smith, unless she was called upon, by reason of what was going on, to make it known to Mrs. Wood that she, as an individual, did not intend to release any claim she might have under Mrs. Wood's compromise agreement. If she had a valid right to hold Mrs. Wood to that agreement, that right still continues, unless she is estopped to enforce it. The justice before whom the cause was heard found that she was thus estopped by her conduct in paying over the money as administratrix of Charles Wood, and he mentions no other ground on which the estoppel rests. We are not able to adopt this conclusion. If Charles Wood himself had paid over the seven thousand dollars to the children of Eliphalet and Lyman, and had taken their receipts, and if Mrs. Moor had stood by and assented to such an application of the money, the necessary elements of an estoppel upon her would still be wanting. Mrs. Wood did not intend that any of the money should go to Mrs. Smith. Charles Wood in his lifetime paid nothing to her or to her children. It must be assumed that Mrs. Wood knew that she was bound to Mrs. Smith, as well as to the other heirs of her husband, and that a release from her was to be procured by Charles Wood. Now if Mrs. Moor had done anything with a design to mislead Mrs. Wood into the belief that she gave up any claim she might have as daughter of Mrs. Smith, and if Mrs. Wood had in fact been misled to her injury, and had acted or omitted to act in consequence thereof, then Mrs. Moor would be estopped. But we do not find these essential elements of an estoppel in what Mrs. Moor did as administratrix of Charles Wood.

When Charles Wood took Mrs. Wood's money and executed his release and agreement, and surrendered her own agreement to her, Mrs. Wood may have jumped to the conclusion that everything had been done that needed to be done in order to enable her to dispose of the trust property without a violation of her agreement. But we find nothing to show that she was misled into this conclusion by any act of Mrs. Moor which was

intended to produce that result. Mrs. Moor did nothing actively, so far as appears, except to pay over the money which she held as administratrix of Charles Wood. She did nothing passively, except to omit to make it known to Mrs. Wood that she did not intend to give up any claim which she herself might have as an individual. Was she called upon to do this? Mrs. Wood apparently was not present when the money was paid over by Mrs. Moor, or when the consultations were had. It does not appear even that Mrs. Moor was afterwards in any communication with Mrs. Wood. It rests upon the party setting up an estoppel to show the grounds on which it rests. The circumstances disclosed in the report, and in that portion of the testimony which is laid before us, fall short of creating an estoppel upon Mrs. Moor. *Tyler* v. *Odd Fellows' Mutual Relief Assoc.* 145 Mass. 134, 138. *Bragg* v. *Boston & Worcester Railroad*, 9 Allen, 54.

It is further contended in behalf of the defendants, that neither Mrs. Moor nor Charles W. Smith can maintain their claim under Mrs. Wood's agreement, because, if the agreement of Charles Wood to procure releases from all of Caleb Wood's heirs was ratified, then the administrators of Charles would be bound to make that agreement good; and since his estate has been mostly distributed, his heirs at law, including those plaintiffs who have received the same, would also in like manner be bound, and that therefore, if these plaintiffs prevail in this suit against the estate of Mrs. Wood, they will become liable to that estate in another suit, and therefore, to prevent circuity of action, this suit should be dismissed. This objection, however, cannot prevail, for two reasons. In the first place, if the executor of Mrs. Wood should have any claim by reason of being held responsible upon Mrs. Wood's agreement, it would be primarily against the estate of Charles Wood, as represented by the administrators; or if that should prove insufficient by reason of their having distributed it in great part, then the claim, if any is enforceable, would not be limited to Mrs. Moor and Charles W. Smith, but would be against all of the distributees. In either case, the liability, indirect or direct, of Mrs. Moor and Charles W. Smith would not be coextensive with their claims against the estate of Mrs. Wood, and at the most their claims should be defeated only to the extent of their subsequent liability to that estate. In

the second place, that subsequent liability cannot be ascertained in the present suit. The administrators of Charles Wood have still some property of his estate in their hands, and have not settled their accounts, and it cannot now be determined how much property they have, or whether it would be sufficient to respond to any claim in favor of the executor of Mrs. Wood. Moreover, it cannot now be determined what damages, if any, her executor would be entitled to recover by reason of Charles Wood's failure to fulfil his agreement. That question has not been discussed, nor have facts been ascertained or reported with a view to its proper determination. At the present time, we need go no further than to say that the determination of that question in the present suit is impracticable.

Finally, it is contended by the defendant that the death of Mrs. Smith, after the death of Caleb Wood, the testator, and before the death of Mrs. Wood, has the effect to exclude her children from any benefit under the provision of Caleb Wood's will. That provision is, that if Mrs. Wood should fail to make a will, then at her decease the trustee should pay one half of said trust fund to the testator's heirs at law then surviving, they taking by right of representation. The argument is, that at the testator's decease Mrs. Smith was an heir at law, and her children were not; that his heirs at law must be ascertained at the time of his death; and that she, being an heir at law at the time of his death, lost the right which she would otherwise have had by reason of not surviving until Mrs. Wood's death. This question has not been discussed by the plaintiffs.

There are very many cases where testamentary language bearing some resemblance to that used by the testator has been construed; but singularly enough, after some little examination, no case has been found by us where a remainder over was limited to the testator's heirs at law then surviving. Where there is a limitation over to a class designated as the testator's heirs at law, or his next of kin, it is usual to hold that this class should be ascertained at the time of the testator's death, unless there is something to be found in the will showing a contrary intention; and this for two principal reasons, namely, that the law leans rather to vested remainders, and that ordinarily in such cases it appears that, after making the special and earlier provisions

for the disposition of his property, the testator does not care to follow the property further, but is content to let the law take its course, and the final devise to his heirs at law means that at that stage he will let it go as intestate property. It will not be profitable to go over many authorities in detail, because the reasoning is often very refined and subtle, and involves a consideration of minute differences of language; and the final determination of each case must after all depend upon the intention, to be gathered from all of the language used by the particular testator whose will is before the court.

In the present case, we have come to the conclusion that the limitation over to the testator's heirs at law then surviving must mean to those persons then surviving who at that time would be his heirs at law ; that is to say, that his heirs at law must be ascertained at the time of his wife's death, as if he had lived till then. The reasons in favor of this conclusion are as follows.

The gift was only to heirs at law then surviving. There was no gift to any heir at law except to heirs at law surviving at the time fixed. It was necessarily wholly uncertain who would fall within that class. It was indeed possible that all of those persons who were heirs at law at the testator's death might die before the time would come for this gift to take effect. The remainder was contingent. It was not like a gift over to several persons named or clearly defined, with a provision that if one or more should die the survivors should take. In such case it has been considered that the remainder is vested, but determinable upon the happening of a contingency. *Blanchard* v. *Blanchard*, 1 Allen, 223. *Gibbens* v. *Gibbens*, 140 Mass. 102, 105. In the present case, the language excludes everybody not living at the time of Mrs. Wood's death, and the interest devised was necessarily only a contingent remainder. *Colby* v. *Duncan*, 139 Mass. 398. Moreover, it cannot be said in the present case, that, if the testator's wife were to die without leaving a will, he was content to let the law take its course with the trust fund, because he expressed a wish antagonistic to such a result, and gave his property, not to his heirs at law at the time of his death, but to his heirs at law surviving at the death of his wife. He was not willing that it should at that stage go as intestate property, but undertook to control the devolution of it. The two main

reasons, therefore, which have usually influenced courts to refer the ascertainment of the heirs at law to the time of the testator's death, fail in this case. Ascertaining them at that time might lead to intestacy, in case all those persons who were then heirs at law should die before Mrs. Wood; or in case a part only of them should die, it would lead to great inequalities among the different branches of his relatives. No reason is apparent why he should wish to discriminate against any branch of the family. The use of the words " they taking by right of representation," shows that no discrimination was intended against the children of his deceased brothers Eliphalet and Lyman. No reason is apparent why he should wish to discriminate against the children of his sister. The words "they taking by right of representation," though not of themselves decisive, nevertheless appear to furnish some indication that he meant to have his heirs ascertained at the time of his wife's death, and to exclude none of those who at that time would be his heirs. The fact that the other half of the trust fund was given to his wife's heirs at law then surviving, the language being similar in both cases, tends to support the same view, since her heirs could not be ascertained till that time. The words " to my heirs at law then surviving," seem to imply that the testator assumes that there must necessarily be a class of this character then in existence, so that his will would be effective to control the disposition of the property. Entering as far as possible into the feelings and wishes of the testator at the time of making his will, it seems on the whole to be satisfactorily certain that, in the event contemplated, he meant to give the one half of the trust fund in equal proportions, having regard to the right of representation, to those persons then living who at that time would be his heirs at law. This gives a fuller and broader, and a more natural, meaning to his words, and seems to be more consistent with his general purposes.

The case of *Dove* v. *Torr*, 128 Mass, 38, seems at first sight to go somewhat in a different direction from that above expressed. In that case the words were, after the time fixed, " the estate herein devised shall descend to those persons who may then be entitled to take the same as my heirs." The court held that they meant that at that stage the law should take its course,

and the estate go to the testator's heirs, as if he had made no further disposition; that this view was fortified by the use of the word " descend," which ordinarily denotes the vesting of the estate by operation of law immediately upon the death of the ancestor; that the word " surviving " was not superadded; and that the word " then " was inserted, not by way of description of the persons who were to take, but by way of defining the time when they should come into the enjoyment of that which was devised to them.   The case in reality, therefore, was quite different from the present.

In *Whall* v. *Converse*, 146 Mass. 345, there was nothing to take the case out of the general rule, that ordinarily a devise of a remainder to heirs shows an intent at that stage to let the property go according to law.   And there is no occasion to do more than merely mention a few other similar cases in this State.   *Minot* v. *Harris*, 132 Mass. 528.   *Abbott* v. *Bradstreet*, 3 Allen, 587. *Minot* v. *Tappan*, 122 Mass. 535.   *Childs* v. *Russell*, 11 Met. 16.

The following cases tend more or less to support the conclusion we have reached upon the construction of the will.   *Fargo* v. *Miller*, 150 Mass. 225.   *Knowlton* v. *Sanderson*, 141 Mass. 323.   *Sears* v. *Russell*, 8 Gray, 86, 94–97.   *Wharton* v. *Barker*, 4 Kay & Johns. 483, which is often cited, and nowhere questioned.   *Sturge* v. *Great Western Railway*, 19 Ch. D. 444. *Clowes* v. *Hilliard*, 4 Ch. D. 413.   *Long* v. *Blackall*, 3 Ves. 486.   *Pinder* v. *Pinder*, 28 Beav. 44.   *In re Morley's trust*, 25 W. R. 825.   *Travis* v. *Taylor*, 12 Jur. (N. S.) 791.   *Bessant* v. *Noble*, 2 Jur. (N. S.) 461.   *Doe* v. *Frost*, 3 B. & Ald. 546.   *Briden* v. *Hewlett*, 2 Myl. & K. 90.   *Butler* v. *Bushnell*, 3 Myl. & K. 232.   *Clapton* v. *Bulmer*, 5 Myl. & Cr. 108.   '

The result is, that the bill should be dismissed as to all of the plaintiffs except Mrs. Moor and Charles W. Smith, and that these two plaintiffs are entitled to a decree in their favor.   It is stated in the report upon which the case was submitted to us, that no technical question of pleading is raised, and that any necessary amendment may be allowed.   The case has therefore been determined upon the substantial question argued before us, whether the plaintiffs are entitled to any relief.

*Ordered accordingly.*