J. THEODORE HEARD & another, trustees, *vs.* JOHN READ & others, executors, & others.

Suffolk.    January 27, 1897. — October 2, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Will — Termination of Trust — Contingent Interest — Division " among my Heirs at Law as though I died intestate " — Power of Trustees to sell and convert into Money — Costs.*

A testator by will gave his daughter his household furniture, etc. absolutely, and his dwelling-house for life, and he then gave the residue, including the reversion of the dwelling-house, to trustees to pay the net income to the daughter for life. The will further provided : " At and after the decease of my said daughter, I give the said trust premises to her issue, equally to be divided between and among them, if more than one, in fee simple, the children of any deceased child of my said daughter to take the parent's share by representation. If my said daughter shall leave no issue surviving her, the trust premises shall, at her decease, be divided into two equal parts or portions, one of which parts shall go to and be held by the said John T. H. and his heirs in fee forever, and the other part shall be divided among my heirs at law as though I died intestate." The trustees were given power " to sell any and all real estate, of which the trust premises shall be at any time composed," and reinvest the premises. At the time of the testator's decease, in 1867, his wife was not living and his daughter was in her forty-third year. Her husband, who was alive when the will was made, died before the testator. John T. H., who was the only child of the testator's wife by a former husband, died in 1880, leaving a wife, and, as his only heir at law, a son, J. Theodore H. He gave by will the residuum of his estate to his wife, who died in 1885, leaving as her only heir at law said J. Theodore H. *Held*, on the death of the testator's daughter, that J. Theodore H. took one half of the trust property, and the heirs of the testator, to be determined as of the time of the death of the testator's daughter, the other half;

that one half of the real estate could be conveyed directly to J. Theodore H., and it was to be left for the trustees to determine whether they could safely pay one half of the personal property to him, or whether administrators of the estates of John T. H. and his wife should be appointed; that the trustees for the half given to the daughter for life had the power to sell and convert into money the personalty, unless those interested consented to a division, if they were more than one, and the fractions were such that the different kinds of property could not specifically be divided; that as to the realty the power to sell was primarily intended to be used for the purpose of investment, the only duty of the trustees being to settle their accounts and pay over the principal directed in the will; that whether authority could be given to them to sell the real estate and divide the proceeds, if necessary, could not now be determined, as there were no sufficient allegations in the bill on which the question could be decided; and that this was not a case in which taxable costs should be allowed against any party, but if application should be made to a single justice for allowance of costs as between solicitor and client out of the fund, it might be considered by him whether such costs should be allowed, and, if so, whether they should be charged upon the whole fund or only upon the half which went to the testator's heirs at law.

BILL IN EQUITY, by the trustees under the will of John W. Trull, to obtain the instructions of the court as to its construction. After giving his daughter, Mrs. Elizabeth Eldredge, his household furniture, etc. absolutely, and the improvement during her life of his dwelling-house in Beacon Street, Boston, and making a pecuniary provision for his stepson, John T. Heard, and John Theodore Heard, the son of his stepson, he gave the residue, including the reversion of the dwelling-house, to trustees, to pay the net income to Mrs. Elizabeth Eldredge for life, and " At and after the decease of my said daughter, I give the said trust premises to her issue, equally to be divided between and among them, if more than one, in fee simple, the children of any deceased child of my said daughter to take the parent's share by representation. If my said daughter shall leave no issue surviving her, the trust premises shall, at her decease, be divided into two equal parts or portions, one of which parts shall go to and be held by the said John T. Heard and his heirs in fee forever, and the other part shall be divided among my heirs at law, as though I died intestate. I give my said trustees and their successors, and any persons acting as trustees under this will, full power and authority to sell any and all real estate, of which the trust premises shall be at any time composed, and to· make any and all deeds, and do any and all acts necessary or proper for carrying into full effect any and all such sales ;

and the purchasers from such trustees shall not be bound to see to the application of the purchase money. And I give my said trustees, and their successors, and any persons acting as trustees under this will, full power and authority to invest, reinvest, and change any and all property of which the trust premises shall be at any time composed."

The prayer was for instructions upon the following points:

" 1. What person or persons are entitled to the principal of the trust estate now in your petitioners' hands, and in what proportions?

" 2. Whether your petitioners have the power to sell the said trust property both real and personal, and to pay over the net proceeds thereof in cash to the persons entitled thereto, or

" 3. Whether they are to divide the personal, so far as it is possible so to do, among the persons entitled thereto, selling only sufficient thereof to raise the cash to make the division just and equal, or

" 4. Whether the real estate passes by the will to the persons entitled thereto, and in the proportion which the court in this case shall adjudge, or

" 5. Whether they are to convey the said real estate to said persons as tenants in common in said proportion, or

" 6. Whether they are to make partition thereof and then convey the several parcels or portions of parcels to such persons."

The case was reserved by *Knowlton*, J., at the request of the parties upon the bill and answers for the consideration of the full court. The facts appear in the opinion.

The case was argued at the bar in January, 1897, and afterwards was submitted on briefs to all the justices.

*R. M. Morse & S. Lincoln*, for the executors.

*G. F. Richardson & F. N. Wier*, (*G. A. Sanderson* with them,) for certain nephews and others.

*J. M. Codman, Jr.*, for certain defendants, filed a brief.

*J. Davis & F. Joy*, for other defendants, also filed a brief.

FIELD, C. J. This is a bill for instructions, brought by the trustees under the will of John W. Trull. The will is dated November 11, 1858. At that time John W. Trull was a widower, between seventy-five and seventy-six years of age, having been born on May 12, 1783. He died on April 12, 1867. He

had been married to a Mrs. Heard, a widow, who died before the
will was made, and by her he had one child only, a daughter,
Elizabeth, who was born on August 29, 1816, and had married a
Mr. Eldredge, and she is the person designated as Mrs. Elizabeth
Eldredge in the will. At the time the will was made she was in
the forty-third year of her age. She died on July 4, 1895, never
having had issue, and leaving no husband surviving her. In
many of the answers of the defendants in this suit it is averred
that she was a widow at the time when the will was made, as
well as at the time when John W. Trull died, but at the argu-
ment it was conceded that Mr. Eldredge, her husband, was alive
at the time when the will was made, and had died before John
W. Trull died. Mrs. Eldredge never married again, and she died
testate, and the executors of her will have been made parties
defendant. John T. Heard, Esquire, mentioned in the will, was
the only child of Mrs. John W. Trull by her former husband.
John T. Heard died on December 1, 1880, leaving a wife, Almira
P. Heard, and, as his only heir at law, his son, J. Theodore
Heard, also mentioned in the will of John W. Trull, and one of
the complainants in the present suit. John T. Heard left a will
in which he devised and bequeathed all the residue of his estate
to his wife Almira P. Heard, and appointed her executrix, and
she duly qualified as such. She died intestate on April 2, 1885,
not having married again, and leaving as her only heir at law
said J. Theodore Heard. John W. Trull was one of the children
of John Trull, and a schedule of the descendants of John Trull
is annexed to the bill. Mrs. Elizabeth Eldredge having died
leaving no issue surviving her, the principal questions in the case
are whether the one half of the trust property which the testator
directed should at her decease leaving no issue surviving her
be " divided among my heirs at law, as though I died intestate,"
belongs wholly to the estate of Mrs. Elizabeth Eldredge, or is to
be divided among the descendants of John Trull who would be
the heirs of John W. Trull if Mrs. Eldredge is excluded, and,
if it is to be divided among such heirs, whether they are to be
determined as of the time of the death of John W. Trull or of
Mrs. Eldredge. It is not seriously disputed that the other one
half of the trust property which in the event that has happened
was to " go to and be held by the said John T. Heard and his

heirs in fee forever," belongs to J. Theodore Heard. So far as this one half is concerned, it is not absolutely necessary to determine whether it must be regarded as vesting in John T. Heard and his heirs on the death of John W. Trull, or as contingent until the death of Mrs. Eldredge without issue surviving her. We think, however, that the interest of John T. Heard and his heirs in the estate of John W. Trull was in a sense contingent until the death of Mrs. Eldredge without issue surviving her, because until her death it could not be certainly known whether she would leave issue surviving her. Still, this interest would be alienable, descendible, and devisable, subject to such contingency, and it would pass, subject to the contingency, as a part of the estate of John T. Heard by his will. That will is not set out in the papers before us, but the statement in the bill of complaint, that by his will he devised all the residue of his estate to his wife, is to be taken as true under the admissions contained in the answers of those defendants who have answered, and under the decrees taking the bill for confessed as against those defendants who have not answered. It is nowhere suggested that John T. Heard in his will gave this contingent interest in the estate of John W. Trull to any other person than his wife, or that she after his death assigned it to any person. It may be assumed, in the absence of any suggestion to the contrary, that on her death, which was before that of Mrs. Eldredge, it passed to her son, J. Theodore Heard, as her sole heir at law.

A distinction should be made between real and personal estate. Strictly speaking, the personal estate, or that which should be regarded as the personal estate of this one half of the trust fund, should be paid to the administrator with the will annexed of the estate of said John T. Heard, who, after paying the debts of the estate, if there are any, and the expenses of administration, should pay it to the administrator of the estate of Almira P. Heard, who, after paying the debts of this estate, if there are any, and the expenses of administration, should pay it to J. Theodore Heard. The administrator of neither of these estates has been made a party to the bill, and we do not know that there are such administrators in existence, but, if deemed necessary, they can be appointed. One half of the real estate can be conveyed directly to J. Theodore Heard. It may be left for the

trustees to determine whether they can safely pay one half of the personal property to him, or whether administrators of these estates should be appointed. *Winslow* v. *Goodwin*, 7 Met. 363. *Childs* v. *Russell*, 11 Met. 16. *Welsh* v. *Woodbury*, 144 Mass. 542. *Bancroft* v. *Fitch*, 164 Mass. 401.

A majority of the court think it manifest, on reading the will, that the testator never intended to give to Mrs. Eldredge out of the residue of his estate anything more than the net income of it during her life. He gave this residue in trust, but he gave to her no power of disposition over the principal of the trust, either by deed or by will. At and after her decease he gave the "trust premises to her issue, equally to be divided between and among them, if more than one, in fee simple, the children of any deceased child of my said daughter to take the parent's share by representation." Such issue, if any had survived Mrs. Eldredge, would have taken the "trust premises" directly under the will of John W. Trull, and not as heirs or distributees of the estate of Mrs. Eldredge. If Mrs. Eldredge left no issue surviving her, it cannot be said that the testator had no purpose to express concerning the disposition of the "trust premises." He directed that one half of the "trust premises" should go to his stepson and his heirs, and the other half should be divided among his heirs at law "as though I died intestate." There is no indication in the will that the testator contemplated the possibility of marrying again and having other children than Mrs. Eldredge. He made no provision for that, and evidently did not regard it as probable. He may or may not have known that, if he married again and had a child by the marriage, the will *ipso facto* would be revoked, but he may be presumed to have known that at the time the will was made Mrs. Eldredge was his only heir presumptive, and that if she survived him she would, unless he married again and had a child, be his only heir at the time of his death.

After giving Mrs. Eldredge his household furniture, etc. absolutely, and the improvement during her life of his dwelling-house in Beacon Street, Boston, and making a pecuniary provision for his stepson and the son of his stepson, the testator established the trust of the residue and expressly included in the trust property the reversion of the dwelling-house. Whether Mrs. Eldredge

was a widow or not at the time the will was made is not very material. There was very little probability of her ever having children, still it was possible. The testator accordingly made provision for her during her life, and for her issue, if she died leaving issue surviving her; but if she died leaving no issue surviving her, there is no intimation in the will that he desired that any part of the principal of the trust property should go to her heirs at law as distinguished from his, or should go to such persons as she should appoint, or that she should have by will or by deed any power of disposition over any part of it. If such is the result, it is the effect of the construction to be given to the words " the other part shall be divided among my heirs at law, as though I died intestate," when there is nothing else in the will indicating that such a result was desired by the testator, but the language of the will in our opinion indicates the contrary.

It is argued that it is a well established rule of law that, when a testator in his will refers to his heirs at law as persons to take any part of his estate, he is presumed to mean his heirs to be determined as of the time of his death, unless it plainly appears that he intends that the heirs should be determined as of some other time. This rule, it is said, was originally established on the ground that the law favors vested rather than contingent remainders. But since contingent remainders in property are within certain limits protected by the law, and are now held to be alienable, descendible, and devisable in the same manner as vested interests, and testators are permitted to make such lawful disposition of their property as they see fit, there is no reason why their intentions as expressed in their wills, so far as the law permits, should not specifically be carried into effect. The tendency of the modern cases is therefore to put the reason of the rule, not on any fondness which the law has for vested over contingent interests, but upon the fact that heirs at law by the very meaning of the words are usually those persons who take inheritable real property immediately on the death of the owner if he dies intestate. When, therefore, these words are used in a will without anything to modify their meaning, it reasonably may be taken that they mean those persons who would have taken the real estate of the testator as of the time

of his death if he had died intestate.    Upon the question
whether the customary meaning of these words when used in a
will is to be regarded as modified by the other provisions of the
will, not only particular clauses but the whole scope of the will
must be considered.    The rule contended for is not a rule of
substantive law, but a rule of interpretation which has been
adopted by the courts as one means of ascertaining the intention
of the testator as expressed in his will, and it never should be
used to defeat what from the whole will appears with reasonable
certainty to have been his intention.    It has been intimated by
this court, but with some doubt, that where property is given by
will to a person for life, and on his death without issue surviving
him to the testator's heirs at law, and it is known to the testator
at the time when the will is made that that person is his sole
heir presumptive and probably will be his sole heir when he dies,
if such person survive him it is to be inferred that that person is
not intended by the designation of the testator's heirs at law.
But in the cases actually decided in this Commonwealth there
were other provisions in the will which supported this construc-
tion.    The cases generally on this subject have been often con-
sidered by this court.    The present tendency in this country is
against absolute rules of construction, and in favor of a careful
consideration of the particular language of each will, as well as
of its general scope and purpose, in order to determine, in view
of the circumstances known to the testator when the will was
made, his intention as expressed in it.    *Sears* v. *Russell*, 8 Gray,
86.    *Knowlton* v. *Sanderson*, 141 Mass. 323.    *Fargo* v. *Miller*, 150
Mass. 225.    *Wood* v. *Bullard*, 151 Mass. 324.    *Peck* v. *Carlton*,
154 Mass. 231.    *Eager* v. *Whitney*, 163 Mass. 463.    *Welch* v.
*Brimmer, ante,* 204.    *Delaney* v. *McCormack,* 88 N. Y. 174.
*Hardy* v. *Gage,* 66 N. H. 552.    *Robison* v. *Portland Orphan
Asylum,* 123 U. S. 702.

   In the present case, not only particular phrases of the will, but
its general purport in the event which has happened and which
the testator must have contemplated, seem to us inconsistent
with any intention that Mrs. Eldredge, if she shall leave no issue
surviving her, should take as sole heir one half of the trust prop-
erty.    The effect of such a construction would be that Mrs.
Eldredge in her lifetime could have transferred this one half to

strangers subject to the contingency of her leaving issue surviving her, or could have given it by will, or, if she died intestate without leaving issue surviving her and not having alienated it, that it would go to her heirs or distributees as distinguished from the heirs of the testator. The direction that "the other part shall be divided among my heirs at law" perhaps tends to show that the testator expected that there might be more than one heir. The words, "At and after the decease of my said daughter, I give," etc., and the words, "If my said daughter shall leave no issue surviving her, the trust premises shall, at her decease, be divided," etc., although not in law absolutely inconsistent with a gift to take effect immediately upon the death of the testator to persons to be ascertained as of that time, yet to the mind of an intelligent layman describe rather a gift of property to take effect on the death of the daughter to persons then to be ascertained, than one to take effect immediately on the death of the testator, and have some tendency to show that the daughter was not to be included in the heirs among whom the one half "shall be divided." A good deal of stress has been laid in argument upon the words "as though I died intestate." It is argued on the one side that these words mean "in the same proportions as if I had died intestate," or that they mean "to the same persons and in the same proportions as if I had died intestate." It is argued on the other side that the words should be interpreted as if they were "as though I then died intestate," and not as if they were "as though I had died intestate." Considering all the provisions of the will, a majority of the court are of opinion that the testator had in mind his heirs at law living at the time of the decease of his daughter, when the one half was to be divided among his heirs at law; and that the words mean "as though I then died intestate."

The heirs of John W. Trull, to be determined as of the time of the death of Mrs. Eldredge, in our opinion, take this one half as if he had died intestate when Mrs. Eldredge died. The principal of the trust fund is a mixed fund of real and personal estate, and the persons who take both the real and the personal estate on the death of Mrs. Eldredge under our decisions must be the same, and they are those heirs of the testator living when Mrs. Eldredge died who would inherit real estate. *Fabens* v. *Fabens,*

141 Mass. 395.  *Lincoln* v. *Perry*, 149 Mass. 368.  *Olney* v. *Lovering*, 167 Mass. 446.

The trustees necessarily must have the power to sell and convert into money the personal property unless the persons interested consent to a division of it if they are more than one, and the fractions are such that the different kinds of property cannot be specifically divided.  With reference to the real property, although the power given to the trustees of the will to sell it is ample, yet real estate always can be conveyed in fractional undivided parts, and we think that this power to sell was primarily intended to be used for the purpose of investment and reinvestment while the trust was active.  Now the only duty of the trustees is to settle their accounts and divide, convey, and pay over the principal of the trust property according to the directions of the will.  Whether authority could be given to them to sell the real estate and divide the proceeds if this were found reasonably necessary, need not now be determined, and there are no sufficient allegations in the bill as it stands on which this question can be decided.  By the decree in this case it will be determined who the persons are who take the principal of this trust property, real and personal, and if there are reasons why the real estate cannot or should not be conveyed to them in fractional undivided parts, but should be sold by the trustees and the proceeds divided, a bill can be brought to determine what authority the trustees have, or what authority the court can give them.  To such a suit all persons having an interest in the property, or their legal representatives, if any have died since the death of Mrs. Eldredge, should be made parties.

The question of costs has been argued by the counsel of J. Theodore Heard.  This is not a case in which taxable costs should be allowed against any party.  If application should be made to a single justice for the allowance of costs as between solicitor and client out of the fund, it then may be considered by him whether any such costs should be allowed, and, if so, whether they should be charged upon the whole fund or only upon the one half which goes to the testator's heirs at law.  A decree should be entered by a single justice in accordance with this opinion.

*So ordered.*