J. HOMER PIERCE & another, trustees, *vs.* REBECCA KNIGHT & others.

ROSE S. NICHOLS *vs.* J. HOMER·PIERCE & another, trustees.

Norfolk.    January 15, 1902. — September 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Devise and Legacy,* Construction.    *Words,* "Heirs at law", "My heirs."

A will, made in 1869, provided for the payment of thirty or more annuities to terminate in 1920 unless otherwise terminated before that time. A codicil contained the following provision: "whenever the income of the estate exceeds the annuities to be paid in any one year, then the surplus income is to be divided by my executors and trustees, among my heirs at law, in such way and in such proportion as may seem to them most in accordance with my wishes, devoting the sum or sums in preference to the purchase of land and homestead for the young married persons among my heirs." The codicil then named three persons, the youngest of whom was at that time fifty-one years of age, "as referees and arbitrators" whose decision should be binding "in case of any doubts or misunderstanding" in reference to the will or the codicil. The codicil was written only six days before the testator's death. At the time of its execution the heirs presumptive of the testator who became his heirs at law upon his death were eight persons, consisting of three sisters, three brothers, and two nieces, daughters of a deceased brother. None of them were young married persons, but there were young married nephews and nieces and others marriageable who might become heirs at law of the testator in case one of his brothers or sisters died before him. *Held,* that it could not be said with any certainty that when the testator executed the codicil he did not expect to survive his brothers and sisters and leave their descendants as his heirs, and therefore the provision in regard to "young married persons" did not make it reasonably certain that the testator used the words "heirs at law" and "my heirs" in other than their natural sense, that the provision as to the appointment of arbitrators had no decisive bearing on the question, nor did the provision giving the trustees power to apportion the distribution at their discretion indicate such an intention, and, there being nothing from which it appeared with reasonable certainty, that it was the intention of the testator to direct that the surplus income should be distributed among those persons who would have been his heirs at law if he had died when the distribution was to be made, the terms "my heirs at law" and "my heirs" as used in the codicil meant those persons who were the testator's heirs at law at the time of his death. *Held, also,* that it was within the discretion of the trustees to distribute the surplus income among the heirs at law in such manner and proportion as might seem to the trustees most in accordance with the testator's wishes as expressed in his will and codicil, without following any statute of distribution.

A will contained the following provision: "From any surplus that may be left from the income of each year, after paying the annuities above described I

direct the following payments to be made from the first funds in hands of the trustees viz. To each of the children of my brother P. and of my sister H., who are otherwise amply provided for, $1,000, as a token of remembrance and to each of the children of my nephews or nieces, I give $1,000 to be paid to each when twenty-five years of age." The annuities referred to were thirty or more in number and might continue unless otherwise terminated for fifty years. *Held,* that this was not a gift to the children of nephews and nieces as a class, but was a present gift to those persons who answered that description at the death of the testator, and that after born children of nephews or nieces were not included.

BILL FOR INSTRUCTIONS, filed as amended November 12, 1901, by the trustees under the will of Sidney Homer, late of Brookline.

CONTRACT by the daughter of a niece of Sidney Homer, late of Brookline, more than twenty-five years of age and born more than three years after the death of Homer, for a legacy of $1,000 under a certain provision of his will. Writ dated September 21, 1901.

The suit in equity was reserved by *Barker*, J. on the amended bill and answers for the consideration of the full court.

The action at law came on to be heard in the Superior Court before *Fessenden*, J., who found *pro forma* for the defendants on an agreed statement of facts and reported the case for the consideration of this court.

The first codicil, in regard to the provisions of which instructions were sought by the bill in equity, omitting the last two paragraphs, was as follows:

" Confirming the will by me made in Boston, April 6, 1869, I Sidney Homer, of Brookline, add thereto this codicil, viz.:

" That in said will I have made certain bequests and annuities; the bequests are to be paid out of the capital of my estate, and the annuities out of the income for each year. '

" In case the income falls short of enough to pay said annuities therein mentioned and hereafter devised, the deficiency is to be paid out of the capital fund of the estate, and whenever the income of the estate exceeds the annuities to be paid in any one year, then the surplus income is to be divided by my executors and trustees, among my heirs at law, in such way and in such proportion as may seem to them most in accordance with my wishes, devoting the sum or sums in preference to the purchase of land and homestead for the young married persons among my

heirs; and I appoint Mr. Samuel B. Pierce, Mr. Franklin Evans and Mr. William C. Appleton as referees and arbitrators, whose decision, or that of a majority of them, shall be final and binding upon all parties, in case of any doubts or misunderstandings in reference to said will of April 6, 1869, or this codicil."

The general provisions of the will are described by the court.

The action for the legacy was founded on the last clause of the following paragraph of the will, in connection with the introductory provision of the first codicil, quoted above, that bequests should be paid out of capital: "From any surplus that may be left from the income of each year, after paying the annuities above described I direct the following payments to be made from the first funds in the hands of the trustees, viz. To each of the children of my brother, Peter T. Homer and of my sister, Mrs. Hannah R. Pierce, who are otherwise amply provided for, $1,000, as a token of remembrance and to each of the children of my nephews or nieces, I give $1,000 to be paid to each when twenty-five years of age."

The case was argued at the bar in January, 1902, and afterwards was submitted on briefs to all the justices.

*J. R. Carret,* for the trustees, submitted a brief.

*W. D. Whitmore, Jr.,* for Rose S. Nichols.

*C. K. Cobb,* for Rebecca Knight.

*F. Brewster,* for William Emerson.

*R. D. Weston-Smith,* for J. Homer Pierce personally and others.

*E. N. Chase,* for Warren Wheeler.

*T. J. Homer, pro se.*

BARKER, J. These two cases involve the construction of the same will. The first is a bill by the trustees for instructions.

The principal question in that case is whether a sum of money, the excess of the income of the trust fund for the year ending December 20, 1899, over the annuities payable during that year, which the trustees are to divide among the testator's heirs at law, shall go to those persons who answered that description on December 20, 1869, the date of his death, or to those who would have been his heirs at law if he had died on December 20, 1899, the date as of which the trustees are required to make the division.

The general rule is well settled. *Whall* v. *Converse,* 146 Mass.

345, 348, and cases cited. But it " is not a rule of substantive law, but a rule of interpretation which has been adopted by the courts as one means of ascertaining the intention of the testator as expressed in his will, and it never should be used to defeat what from the whole will appears with reasonable certainty to have been his intention." *Heard* v. *Read*, 169 Mass. 216, 223.

In the first place the application of the general rule to this instance works no inconsistency with the general plan of the testator. When the will and the codicils were executed the persons who were at his death his heirs at law were his presumptive heirs. They were eight in number, three sisters, three brothers and two nieces daughters of a deceased brother. The will discloses no hostility to any of these persons. Two of them, one brother and one sister were amply provided for and not in need of assistance from him. The other six were not so situated. One of the six was a sister sixty-one years old and unmarried. The other five were all married, and three of them at least had children and some of them had grandchildren. The brother and sister who had means of their own each had children.

While the testator gave no pecuniary legacy to this brother or sister, it appears from the will that this was because they had means of their own, and he did give to each of their children $1,000 as a token of remembrance. His ultimate residuary bequest was to his heirs at law, and whether that meant his heirs at his death or those who should be his heirs when the residuum should be distributed, each of his eight presumptive heirs had the same chance to share in the residuum by themselves or their issue. None of them was discriminated against save only so far as was necessary to carry out the general scheme of the testator. He gave his estate to trustees who were to pay out of the principal some thirty legacies mostly of $1,000 each, some to relatives and friends and others to charities. The trustees were to pay also some thirty or more annuities, beginning with the testator's death and making the payments quarterly during the lives of the annuitants, with a provision that all annuities should cease on January 1, 1920, if not otherwise terminated before that time. The annuitants included all his brothers and sisters except the two who had means of their own, and the

children of all his brothers and sisters except those two, and a few more distant relatives.

The annuities to his brothers and sisters were of $2,000 each, and those to the children of his brothers and sisters of $500 each. The annuities which began at his death would require to meet them so long as all the annuitants should live about $18,000 a year. His estate after the payment of legacies from the principal amounted to no more than $250,000, and he provided that if there was not sufficient income to pay the annuities the deficiency should be paid out of capital. This shows that his ruling thought was to ensure the comfort of his annuitants for their lives. His disposition of the capital was to direct the payment of $150,000 to three of his nephews, $50,000 to each, when the annuities should have terminated, and that the residue should be divided equally among his heirs at law but not before the expiration of thirty years from the day of his death. To give the surplus of the income for any year to those who were his heirs at his death can in no way interfere with the working of this general scheme.

The contention that the surplus income is given to those who would be the heirs if the testator had died when it was to be divided has its chief support in the language of the clause in the first codicil directing it to be divided among the testator's heirs at law. The language of the testator is this : " Whenever the income of the estate exceeds the annuities to be paid in any one year, then the surplus income is to be divided by my executors and trustees, among my heirs at law, in such way and in such proportion as may seem to them most in accordance with my wishes, devoting the sum or sums in preference to the purchase of land and homestead for the young married persons among my heirs."

It is true that there were among the eight persons who were the testator's presumptive heirs when he used this language and who became his heirs at his death none who could be called young married persons. This however does not make it reasonably certain that the testator did not use the phrases " my heirs at law " and " my heirs " in their usual sense. When the provision was written he had a nephew of twenty-nine who had been married but a few months, and a niece of twenty-nine who had been married but a few days, and another niece of twenty-

nine who had been married five years. One sister who was seventy years old had an unmarried daughter of twenty-seven. One of his brothers who was fifty-eight had an unmarried daughter of twenty-nine, and another brother of fifty-six had four marriageable children. The death of a brother or sister before that of the testator would place among his heirs the children of the brother or sister, so that the testator at his death well might have young married persons among his heirs. While the codicil in which the clause is found was written but six days before the testator's death it cannot be said with any certainty that when he executed it he did not expect to survive his brothers and sisters and to leave their descendants as his heirs.

. That part of the clause which directs the division of surplus income among the testator's heirs at law by his trustees in such way and in such proportion as may seem to them most in accordance with his wishes might well be of use if the eight presumptive heirs should become the testator's heirs at law. The death of a brother or of a sister putting an end to the annuity of $2,000 which he or she had enjoyed might cause a surplus of income and yet leave the family of the decedent in comparative want which under that provision might be mitigated by the trustees.

The appointment of three persons as arbitrators in case of any doubts or misunderstandings in reference to the original will or to the codicil in which the provision as to the division of surplus income is contained seems to us to have no decisive bearing upon the present question. If such a board was thought by the testator to be advisable because he meant by the words " my heirs at law " a body of persons changing as the trust continued, it would have been evident to him that the board might have more to do as the body increased in numbers with the lapse of time. But the youngest of the arbitrators when appointed was of the age of fifty-one. They well might live to settle any doubts or misunderstandings arising upon the death of the testator's brothers and sisters but not more.

While with such a trust there might be in any year a surplus of income, larger and increasing surpluses would be natural in the later years, and it is urged that the testator would not have

directed his trustees to divide them among persons who in the ordinary course of nature would have died long before the division. But even if we should assume that the division intended must have been only among the eight persons who were the presumptive heirs it was not directed to be an equal or a *per stirpes* division, but was to be made in such way and in such proportion as might seem to the trustees most in accordance with the testator's wishes. The will shows that his prevailing wish was to provide for the decent support of the families of those of his brothers and sisters who were not amply otherwise provided for. There is no reason to suppose that the testator anticipated that any of his presumptive or possible heirs at law would leave unreasonable wills or die insolvent. It cannot be said that a direction to divide surplus income from time to time among the testator's actual heirs in such way and in such proportion as may seem to trustees most in accordance with the testator's wishes would not seem to him as well calculated to carry out his chief wish as a direction to distribute it directly among those who would have been his heirs at law had he died when the division was to be made.

We are of opinion that it does not appear with reasonable certainty to have been the intention of the testator to direct that the surplus income should be divided among those persons who would have been his heirs at law if he had died when the division was to be made. The petitioners are to be instructed that the testator, by the terms " my heirs at law " and " my heirs " as used in his first codicil meant those persons who were his heirs at law at the time of his death.

This conclusion renders immaterial all of the petitioners' other requests but one, namely, whether it is their duty to divide the surplus among the heirs at law in the proportions to which they would have been entitled under the statute of distributions if the testator had died intestate, or is it within their discretion to distribute the surplus among the heirs at law in such manner as may seem to the trustees most in accordance with the testator's wishes.

Upon this question no arguments have been addressed to us. The provision in question is not in terms a gift to the heirs at law, but a direction to trustees to divide a fund which may or

may not be raised among a class of persons in such way and in such proportion as may seem to the trustees most in accordance with the testator's wishes.   Giving due weight to the fact that the testator might well anticipate that his trustees might have to make such divisions among persons most or all of whom might be dead at the time of the division, still the command is not to make an arbitrary division according to the statute of distributions, but to make the division in such way and in such proportion as may seem to them most in accordance with the testator's wishes.   We are of opinion that in making the division they may take into account its actual practical effect, that they are not limited to dividing it in accordance with any statute of distribution, and may divide the surplus among the heirs in such way and in such proportion as may seem to the trustees most in accordance with the testator's wishes as expressed in his will and codicils.

The other action is a suit to recover a legacy.   The plaintiff is a daughter of a niece of the testator, and was born on January 11, 1872, and became twenty-five years of age on January 11, 1897, and the writ was sued out after that date.   The plaintiff contends that the trustees should pay her the sum of $1,000, and founds her contention upon the following paragraph of the will, namely: " To each of the children of my brother, Peter T. Homer and of my sister, Mrs. Hannah R. Pierce, who are otherwise amply provided for, $1,000, as a token of remembrance and to each of the children of my nephews or nieces I give $1,000, to be paid to each when twenty-five years of age," taken in connection with a provision in the first codicil to the effect that the bequests made in the will are to be paid out of the capital of the estate.   In the view which we take it is unnecessary to consider whether the effect of the codicil is to make all bequests payable from principal, or simply to summarize the operation of the will.

The language of the bequest is that of a present gift.   It is not a gift to a class, but to each of the persons who answer a certain description.   The natural meaning is that each donee must answer that description at the death of the testator which is the time as of which the will speaks.   There then were several persons who answered the description.   They took under the

gift, and there is nothing in the will or codicils to make it reasonable to suppose that others not then in existence were intended to be donees also. On the contrary as the testator had twenty-one nephews and nieces the payment of $1,000 to each of their after born children might put a great burden upon the trust and seems inconsistent with the testator's general plan. We see nothing to call for a discussion of the rules applicable to determine whether after born children shall be admitted to share in gifts to a class.

> *In suit in equity decree to be entered in accordance with foregoing opinion; in action at law judgment for defendants affirmed.*