WILLIAM WHITE, trustee, *vs.* GRACE K. UNDERWOOD & others.

SAME *vs.* ANNA T. TRIPLER & others.

SAME *vs.* MERCEDES HUBBARD & others.

Suffolk.   March 18, 1913. — June 18, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Devise and Legacy.   Words,* "Heirs at law."

A testator by his will created a trust fund, of which the income was to be paid to his children or their issue until the death of an unmarried daughter of the testator, whereupon the following provision was to take effect: "Upon the death of the said [unmarried daughter] whenever it shall take place, this trust shall cease; and my said trustees, and the survivors and survivor of them shall then pay from the said trust-estate, or the proceeds thereof, all debts and demands, if any, which shall exist upon or against the same, and distribute all the remainder thereof among my heirs at law, according to the statutes which shall then be in force in said Commonwealth regulating the distribution of intestate estates." *Held,* that by the words "heirs at law" the testator designated those persons, not expressly excluded, who would have been his heirs at law if he had died at the time of the death of his unmarried daughter.

A testator by his will left a trust fund to be distributed upon the death of an unmarried daughter among those persons who would have been his heirs at law had he died at the time of the death of such daughter. By a codicil he directed that neither the wife nor issue of a certain son should have any part of his property or estate and that the distribution of the trust fund should be made among his "heirs at law, other than the wife and issue of" the son designated. At the time of the making of the codicil the designated son had been divorced from a wife by whom he had children, and after the death of the testator this son married a second wife by whom he had children. At the time of the death of the unmarried daughter of the testator, the designated son of the testator had died and his second wife and all his children were living. *Held,* that by the terms of the codicil the later wife and children of the designated son as well as the children of his first wife were excluded from the distribution.

DE COURCY, J.   This is a bill for instructions by the sole trustee under the will of John C. Hubbard, brought upon the decease of Anna M. Hubbard, a daughter of the testator, for the determination of the persons entitled to the remainder over of the trust estate, and the proportions to which those persons are entitled.

By the seventh clause of his will, after making certain provisions for the payment to his children or their issue of the income of the trust estate, the testator provided as follows: "Upon the

death of the said Anna M. Hubbard, whenever it shall take place, this trust shall cease; and my said trustees, and the survivors and survivor of them shall then pay from the said trust-estate, or the proceeds thereof, all debts and demands, if any, which shall exist upon or against the same, and distribute all the remainder thereof among my heirs at law, according to the statutes which shall then be in force in said Commonwealth regulating the distribution of intestate estates." The main question presented is whether the "heirs at law" of the testator to whom the remainder is given, are to be determined as of the date of his death or as of the time for distribution.

Admittedly the general rule of construction is that where there is a limitation over to a class designated as the testator's heirs at law, the persons who take are those that answer the description at the time of the testator's death, unless a different intention is manifested by the will. Various reasons have been given for this rule, such as the leaning of the law towards vested rather than contingent remainders, and, more recently, the fact that heirs at law by the very meaning of the words are usually those persons who inherit real property immediately on the death of the owner if he dies intestate. *Wood* v. *Bullard,* 151 Mass. 324. *Heard* v. *Read,* 169 Mass. 216. Whatever its basis it must not predominate to defeat what appears from the whole will to have been intended by the testator. As was said by Hammond, J., in *McCurdy* v. *McCallum,* 186 Mass. 464, 469, "The cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided that it is consistent with the rules of law." And to ascertain that intention it is necessary to consider the particular language of each will, and its general purpose, in the light of the circumstances known to the testator.

It seems to us that the obvious meaning of the language used in this will shows it to be the intention of the testator that the remainder should go to those who would be his heirs at law at the death of his daughter Anna, and not to those who were his heirs at the date of his own death. The date of her death as indicating the time of vesting the remainder is emphasized: "whenever it shall take place," the trust is to cease, and the property is to be distributed "then." *Harding* v. *Harding,* 174 Mass. 268. By

the express words of the clause in question the distribution is
to be made according to the statutes "which shall then be in force."
He well may have anticipated, what has proved to be the case,
that the persons who would share in the distribution, and the
proportion they would take under the statutes that would be in
force at the termination of the trust would be different from those
who would take under the statutes existing at the time of his
own death.   It is unreasonable to assume that he intended to have
the persons in whom the remainder vested ascertained under the
law existing at one time and to have the manner and proportion of
the distribution among those persons determined at another time
by a different statute.

This view, that the testator intended the remainder to vest
in those persons, not expressly excluded, who would have been his
heirs at law if he had died on the date of the death of Anna M.
Hubbard, is confirmed by other considerations, some of which may
be mentioned.   It is significant that there are no words of present
gift to the heirs, but the distribution is made by way of a direc-
tion to the trustees "to distribute all the remainder."   *Crapo*
v. *Price*, 190 Mass. 317, 322.   More conclusive is the fact that
the testator by implication excludes the heirs and devisees of his
daughter Anna from taking any interest in the remainder after
her life estate.   For it seems clear to us that the testator intended
to exclude them.   Anna M. was a single woman and forty-nine
years of age when her father died.   He undoubtedly anticipated
that she would die unmarried or without children.   Special pro-
vision was made for her support during her lifetime, and at her
death the trust was to terminate.   In this connection we may
point out that if the will were construed as vesting the remainder
in those who were the heirs at the time of the testator's death,
the decease of Gorham* during the life tenancy might result

---

* By a codicil the testator provided that neither the wife nor issue of
his son Gorham E. Hubbard should have any part of his property or estate,
and directed that in the first distribution of his estate under the seventh
article of his will his trustees should make such distribution among his
" heirs at law, other than the wife and issue of the said Gorham E."   The
testator died on January 7, 1877.   Anna M. Hubbard died unmarried on
April 9, 1911.   Gorham E. Hubbard died on September 29, 1892.   The
will of John C. Hubbard was dated October 27, 1873.   The codicil to his

in his wife and children taking, through Anna, a part of the remainder; and this the codicil expressly forbids. *Heard* v. *Read,* 169 Mass. 216. *Fargo* v. *Miller,* 150 Mass. 225.

As to the wife and issue of Gorham E. Hubbard, it seems clear from the explicit terms of the codicil that even the later wife and issue are excluded. It follows that the decree of the Probate Court must be reversed. We are of opinion that the true construction of the will is that the ultimate remainder of the estate is to be distributed among those who would have been the heirs of John C. Hubbard had he died on April 9, 1911, when his daughter Anna M. died, excepting those who would claim through his son Gorham E. Hubbard, and that the distribution is to be *per capita* among those of equal degree of relationship. In other words one fifth goes to each of his living grandchildren, Anna T. Tripler, Grace K. Underwood, Frank P. Kennard, and Arthur W. Kennard, and the remaining one fifth is to be divided among the heirs of his deceased grandson William P. Kennard. R. L. c. 133, § 1. *Peck* v. *Carlton,* 154 Mass. 231. *Welch* v. *Brimmer,* 169 Mass. 204. *Heard* v. *Read,* 169 Mass. 216. *Crapo* v. *Price,* 190 Mass. 317. *Brown* v. *Wright,* 194 Mass. 540. *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35. *Sias* v. *Chase,* 207 Mass. 372.

*Decree accordingly.*

*A. H. Weed,* for the plaintiff, stated the case.

*J. H. Sherburne,* (*F. G. Goodale* with him,) for Grace K. Underwood and others.

*R. H. Gardiner, Jr.,* for Grace K. Underwood as executrix of and devisee under the will of Anna M. Hubbard.

*F. A. Fernald,* for Anna T. Tripler and for Priscilla S. Hubbard individually and as executrix of the will of John Capen Hubbard.

*A. M. Lyon,* for Mercedes Hubbard and others.

*H. S. Allen,* guardian *ad litem* for two grandchildren of Gorham E. Hubbard, submitted their case without a brief.

---

will was dated December 25, 1875. At or about the date of the codicil Gorham E. Hubbard was divorced from a wife by whom he had four children. On February 4, 1877, after the death of the testator, he married a second wife by whom he had four children. The second wife and all of the eight children survived him and were living at the time of the death of Anna M. Hubbard.